David McILRAVY, Appellant,

v.

NORTH RIVER INSURANCE COM-
PANY and Crum & Forster In-
surance, Appellees.

No. 01–0008.

Supreme Court of Iowa.

Oct. 9, 2002.

Maureen Roach Tobin of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

Stephen D. Hardy and Michael A. Carmoney of Grefe & Sidney, P.L.C., Des Moines, for appellees.

Mark S. Soldat, Algona, and David D. Drake of Lawyer, Lawyer, Dutton & Drake, West Des Moines, filed a brief on behalf of amicus curiae Iowa Trial Lawyers Association, by the Core Group of its Workers' Compensation Section.[1]

CADY, Justice.

The primary issue we face in this appeal is whether an injured worker presented a viable cause of action against his employer's workers' compensation carrier for bad faith in denying his claim for workers' compensation benefits. The district court granted the carrier's motion for summary judgment and the court of appeals affirmed the decision. On further review, we vacate the decision of the court of appeals, affirm the decision of the district court in part and reverse in part, and remand for further proceedings.

## I. Background Facts and Proceedings.

David McIlravy was employed by Ace Construction Company as an iron worker. His work commonly required him to bend, lift, stoop, carry, and climb. He normally wore a tool belt that weighed approximately twenty pounds.

On August 7, 1997, McIlravy injured his right knee while working at a job site in Ames. McIlravy was helping erect a build-

ing at the time. The injury occurred after McIlravy descended from a ladder and was walking across a level cement floor to pick up some items some distance away. While walking, he felt and heard a pop in his knee. He was not wearing his tool belt at the time, and was not carrying anything. He had experienced no prior problems with his knee. McIlravy felt no pain at the time and completed his work tasks for the day. That evening, however, after returning home, his knee began to swell. It was extremely sore and stiff the following morning. McIlravy went to the work site in the morning, but the condition of his knee prevented him from working after a short period of time. His employer directed him to a medical clinic in West Des Moines, where he was referred to Jon C. Gehrke, M.D., an orthopedic surgeon.

On August 12, 1997, a claims examiner employed by the workers' compensation carrier for Ace Construction, North River Insurance Company/Crum & Forster Insurance Company, interviewed McIlravy for the purpose of determining whether to pay benefits for the injury. On August 18 the claims examiner sent McIlravy a letter advising him that benefits were denied. The letter explained that the knee injury was idiopathic and only coincidentally occurred during working hours.

On August 25, 1997, Dr. Gehrke sent a letter to the claims examiner indicating he performed an MRI on McIlravy's right knee. The procedure revealed the injury was a torn medial meniscus. He further

1. Also appearing on behalf of the amicus curiae were Stephen D. Lombardi of the Lombardi Law Firm, West Des Moines; Max J. Schott and Jason D. Neifert of Max Schott & Associates, Des Moines; Thomas A. Palmer of Lawyer, Dougherty, Palmer, & Flansburg, P.L.C., West Des Moines; Robert R. Rush of the Rush Law Firm, Cedar Rapids; David W. Stamp of Ball, Kirk & Holm, P.C., Waterloo; Janice Valentine, Fort Dodge; Mindi Vervaecke of Fitzsimmons & Vervaecke, Mason City; Joseph L. Walsh of Hedberg, Ward, Owens & Vonderhaar, Des Moines; and Thomas M. Wertz of the Wertz Law Firm, Cedar Rapids.

expressed his opinion, without explanation, that the injury was "work-related." After conservative treatment failed, Dr. Gehrke performed partial medial meniseetomy surgery to repair the knee. North River made no effort to obtain an independent medical examination to dispute or corroborate Dr. Gehrke's opinion on the cause of the injury. The company also did not consult an attorney to determine whether Dr. Gehrke's letter had any impact on the denial of McIlravy's claim.

North River continued to deny benefits and McIlravy filed a contested case proceeding with a demand for penalty benefits. The parties deposed Dr. Gehrke in February 1998, who explained he believed the injury sustained by McIlravy was work-related because McIlravy was working when the injury occurred and his job involved heavy labor activities, which placed him at greater risk for such injuries than workers engaged in less labor intensive activities. North River did not obtain a medical expert to review Dr. Gehrke's opinion following the deposition, and conducted no further investigation.

The industrial commissioner awarded benefits to McIlravy, and assessed a penalty for the unreasonable denial of benefits. The district court affirmed the decision of the industrial commissioner on its review of the case, and our court of appeals affirmed the decision of the district court on appeal.

On August 3, 1999, McIlravy filed a tort action against North River for bad faith refusal to pay the workers' compensation benefits. North River moved for summary judgment, and McIlravy moved for partial summary judgment. North River argued that McIlravy's action was required to be dismissed because the workers' compensation claim was fairly debatable as a matter of law. McIlravy argued that the element of the bad faith tort requiring him to establish the absence of a reasonable basis for denying benefits was established as a matter of law under the doctrine of issue preclusion when the industrial commissioner awarded penalty benefits as a part of its decision to award workers' compensation benefits.

The district court denied McIlravy's motion for a partial summary judgment and granted summary judgment for North River. It found that the doctrine of issue preclusion was inapplicable to the case, and further found there was no substantial evidence presented to establish the absence of a reasonable basis by North River for denying benefits. The district court found the claim for benefits was fairly debatable at the time of denial because the cause of injury was idiopathic. The court of appeals affirmed. It found there was a reasonable debate whether the injury was caused by McIlravy's individual susceptibility to the injury or the heavy labor activities associated with his job because McIlravy was not engaged in any work activity that placed stress or trauma on his knee at the time of the injury.

## II. Scope of Review.

We review a ruling on a summary judgment motion for errors at law. *Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 683 (Iowa 2001); *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000); *Swartzendruber v. Schimmel*, 613 N.W.2d 646, 649 (Iowa 2000). A district court properly grants summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001); *Crippen*, 618 N.W.2d at 565; *Swartzendruber*, 613 N.W.2d at 649. A factual issue is "material" when "the dispute is over facts that might affect the

outcome of the suit." *Fouts ex rel. Jensen v. Mason*, 592 N.W.2d 33, 35 (Iowa 1999) (citation omitted). The burden is on the party moving for summary judgment to prove the facts are undisputed. *Interstate Power Co. v. Ins. Co. of N. Am.*, 603 N.W.2d 751, 756 (Iowa 1999); *Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457, 464 (Iowa 1984).

In ruling on a summary judgment motion, the facts must be viewed in a light most favorable to the party resisting the motion. *McNally & Nimergood v. Neumann–Kiewit Constructors, Inc.*, 648 N.W.2d 564, 570 (Iowa 2002) (citation omitted); *State ex rel. Palmer*, 637 N.W.2d at 149; *Crippen*, 618 N.W.2d at 565. The court must consider on behalf of the non-moving party every legitimate inference that can be reasonably deduced from the record. *State ex rel. Palmer*, 637 N.W.2d at 149; *Crippen*, 618 N.W.2d at 565; *Shivvers v. Hertz Farm Mgmt., Inc.*, 595 N.W.2d 476, 479 (Iowa 1999). An inference is legitimate if it is "rational, reasonable, and otherwise permissible under the governing substantive law." *Butler v. Hoover Nature Trail, Inc.*, 530 N.W.2d 85, 88 (Iowa Ct.App.1994) (citation omitted). On the other hand, an inference is not legitimate if it is "based upon speculation or conjecture." *Id.* If reasonable minds may differ on the resolution of an issue, a genuine issue of material fact exists. *Swartzendruber*, 613 N.W.2d at 649; *Shivvers*, 595 N.W.2d at 479.

### III. Applicability of Issue Preclusion.

McIlravy argues that the element of the bad faith tort requiring him to establish the absence of a reasonable basis for denying benefits was established as a matter of law under the doctrine of issue preclusion when the industrial commissioner awarded penalty benefits as a part of its decision to award workers' compensation

benefits. In so arguing, McIlravy seeks to intermingle two distinct methods by which a self-insured employer or an employer's workers' compensation carrier may be penalized due to their delay in payment of workers' compensation benefits.

The first method is described by statute. It arises from the language of Iowa Code section 86.13, which states in part:

> If a delay in commencement or termination of benefits occurs without reasonable or probable cause or excuse, the workers' compensation commissioner *shall* award benefits in addition to those benefits payable under this chapter, or chapter 85, 85A, or 85B, up to fifty percent of the amount of benefits that were unreasonably delayed or denied.

Iowa Code § 86.13 (1999) (emphasis added).

The determination of whether a delay "occurs without reasonable or probable cause or excuse," requires an examination of the employer's or the carrier's actions in response to the employee's claim. *Id.* A delay in commencement of benefits is permissible if "(1) the delay was necessary for the insurer to investigate the claim or (2) the employer had a *reasonable basis* to contest the employee's entitlement to benefits." *Christensen v. Snap–On Tools Corp.*, 554 N.W.2d 254, 260 (Iowa 1996) (emphasis added). "A 'reasonable basis' for denial of the claim exists if the claim is 'fairly debatable.' " *Id.* In every section 86.13 claim, "[t]he focus is on whether timely payment of the benefits due was made and if not, whether there was a reasonable excuse for the failure to make timely payment of the amount owed." *Id.*

The second method by which a self-insured employer or employer's workers' compensation carrier may be penalized for a delay in payment of benefits is

by a private cause of action for first-party bad faith.[2] This cause of action arises from "'the knowing failure to exercise an honest and informed judgment'" on the part of a defendant from whom the employee seeks compensation due to work-related injuries. *Kiner v. Reliance Ins. Co.*, 463 N.W.2d 9, 12 (Iowa 1990) (quoting *Anderson v. Cont'l Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 376 (1978)). As we observed recently: "to establish a claim for first-party bad faith, the insured must prove two facts: (1) that the insurer had no reasonable basis for denying benefits under the policy and, (2) the insurer knew, or had reason to know, that its denial was without basis." *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 657 (Iowa 2002) (citing *Kiner*, 463 N.W.2d at 12); *see also Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988) (citation omitted) (adopting the first-party bad faith cause of action in Iowa); *Boylan*, 489 N.W.2d at 744 (extending the first-party bad faith cause of action into the area of workers' compensation). The two-part test for first-party bad faith applies no matter what type of insurance is provided by the defendant insurer, including workers' compensation. Bad faith claims are applicable to workers' compensation insurers because they hold the discretionary power to affect the statutory rights of workers, which clearly reflects their obligation to act in good faith in the exercise of this authority.

Given the use of the phrase "reasonable basis" in the standard for imposition of the statutory penalty and in the standard for imposition of a civil penalty, it is understandable that McIlravy would utilize the potential preclusive effect one reasonable basis determination would have on the other reasonable basis determination in either of the particular contexts in which the standards apply. In fact, McIlravy offers at least one recent case in support of his argument that issue preclusion applies in this case. *See Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 398 (Iowa 2001). Unfortunately, McIlravy's reading of the *Gibson* case stretches its language too far. In *Gibson*, we only considered the commissioner's prior finding of no reasonable basis for a refusal to pay workers' compensation benefits as a factor in our review of the sufficiency of the evidence to support the submission of a claim for punitive damages in the bad faith action. *Id.* We did not address whether or not such evidence was "preclusive" of a further determination of whether a reasonable basis existed in a common law action. *See id.*

■ Moreover, there are a number of differences between the statutory and common law provisions under which McIlravy has sought redress. The most significant for this case is the difference in burdens of proof placed on the parties in the two different proceedings. In the administrative context, where the industrial

---

**2.** At first blush, a cause of action for bad faith pursued by an employee against an employer's workers' compensation carrier appears to be a matter of "third-party" bad faith more than one of "first-party" bad faith. *See Long v. McAllister*, 319 N.W.2d 256, 262 (Iowa 1982) (refusing to recognize a tort cause of action for bad faith by a third party against a carrier for its failure to settle the third-party's claim against the carrier's insured). However, when first adopting the bad faith cause of action in the workers' compensation context, we determined that such a suit is more accurately considered as one for first-party bad faith given "the obligations that [Iowa Code §§ 86.13, .27] and administrative regulations place on the insurer." *Boylan v. Am. Motorists Ins. Co.*, 489 N.W.2d 742, 743 (Iowa 1992). Since that time, cases alleging bad faith on the part of a workers' compensation carrier have been considered under the first-party bad faith rubric. We take that approach in this case as well.

commissioner is responsible for applying the provisions of section 86.13, the defendant/employer or carrier bears the burden of proving that its denial of benefits had a reasonable basis. *Christensen,* 554 N.W.2d at 260. On the other hand, in a civil case where the trier-of-fact is responsible for applying the common law standards of the first-party bad faith tort, the plaintiff/insured bears the burden of proof. *See United Fire & Cas. Co.,* 642 N.W.2d at 657; *Dolan,* 431 N.W.2d at 794.

 The primary purpose of issue preclusion is to protect litigants from the "vexation of relitigating identical issues with identical parties or those persons with a sufficient connective interest to the prior litigation" with an additional benefit of promoting judicial economy. *State ex rel. Casas v. Fellmer,* 521 N.W.2d 738, 740–41 (Iowa 1994) (citation omitted). There are, however, four exceptions to issue preclusion. The fourth exception is the most relevant for our disposition of the preclusion issue in this case:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: ...
>
> (4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; *the burden has shifted to his adversary;* or the adversary has a significantly heavier burden than he had in the first action.

*Heidemann v. Sweitzer,* 375 N.W.2d 665, 667–68 (Iowa 1985) (emphasis added) (quoting Restatement (Second) of Judgments § 28(4) (1982)).

In this case, the burden has shifted between the two parties. In the administrative procedure, the burden was on North River. In this civil suit, McIlravy has the burden. Given the different burdens of proof between the two different penalty mechanisms and the two different stages of the North River/McIlravy dispute, issue preclusion is inapplicable in this case. The district court was correct in overruling McIlravy's motion for partial summary judgment on this issue.

## IV. Propriety of Summary Judgment.

 The second issue we face in this appeal is whether the district court properly granted summary judgment in favor of North River based on the court's finding that McIlravy failed to present substantial evidence to establish the absence of a reasonable basis by North River for denying benefits. In *Thompson v. United States Fidelity & Guaranty Co.,* 559 N.W.2d 288, 290 (Iowa 1997), we observed, "the question of whether the fairly debatable issue was one for the court or the jury depends on the facts of the individual case." Ultimately,

> there are no unique rules that apply when a district court rules on a directed-verdict motion in a bad-faith case. In such a case, as in all others,
>
> > [t]ime-honored rules govern our review of [a court's ruling on] such motions. The primary standard is that of substantial evidence; where no substantial evidence exists to support each element of a plaintiff's claim, directed verdict or judgment n.o.v. is proper. Substantial evidence is that which a "reasonable mind would accept as adequate to reach a conclusion." Where reasonable minds could differ on an issue, directed verdict is improper and the case must go to the jury.

*Thompson,* 559 N.W.2d at 290–91 (quoting *Stover v. Lakeland Square Owners Ass'n,* 434 N.W.2d 866, 873 (Iowa 1989) (citations omitted)); *see also United Fire & Cas. Co.,* 642 N.W.2d at 657 (whether a claim is fairly debatable is appropriately decided by the court as a matter of law) (citation omitted). Therefore,

> a court should direct a verdict for the defendant only when, viewing the record in the light most favorable to the claimant, there is no substantial evidence to support the elements of the claim, *i.e.,* that the insurer lacked a reasonable basis for denial and that it knew or should have known it lacked such a basis.

*Thompson,* 559 N.W.2d at 291 (citations omitted).

A key dispute in this case focuses on the point in time at which a court should look to determine the reasonableness of an insurer's actions in denying benefits in light of the evidence in its possession. McIlravy asserts that North River's obligation to act reasonably was present throughout all stages of their dispute, including the point in time after North River's first denial of benefits when it received the letter from Dr. Gehrke opining that McIlravy's injury was work-related. North River argues that it had a reasonable basis in denying benefits initially and need not reestablish such a basis at subsequent points in time, particularly if such a reassessment was supported by the opinion of a doctor with no training in making determinations of legal causation. We have previously indicated that in cases of this type the inquiry must focus on the defendant's initial denial as well as "whether, at some later date, [the insurer] became aware there was no reasonable basis to continue denying plaintiffs' claim." *Dirks v. Farm Bureau Mut. Ins. Co.,* 465 N.W.2d 857, 862 (Iowa 1991); *see also Squealer Feeds v. Pickering,* 530 N.W.2d 678, 683 (Iowa 1995). For that reason, we must consider whether North River initially had a reasonable basis for denying McIlravy's claim, and, if so, whether North River later continued to have a reasonable basis to deny McIlravy's claim after its initial denial.

■■■■■ We conclude the information gathered from the initial interview of McIlravy gave North River a reasonable basis to deny the claim. An injury must arise out of the worker's employment to be compensable. This means " 'the injury must not have coincidentally occurred while at work, but must in some way be caused by or related to the working environment or the conditions of . . . employment.' " *Floyd v. Quaker Oats,* 646 N.W.2d 105, 107 (Iowa 2002) (quoting *Miedema v. Dial Corp.,* 551 N.W.2d 309, 311 (Iowa 1996)). Based on McIlravy's statement that he was merely walking when the injury occurred, it was reasonable for North River to conclude the injury coincidentally occurred while at work. McIlravy was not doing anything at the time that he would not have been doing outside of his employment. We recognize that our workers' compensation law does not require the work place activity to involve more hazard or exertion than a claimant's activities outside the work place as a condition of compensability. *Floyd,* 646 N.W.2d at 108. Yet, this does not mean an injury sustained while walking, without any additional evidence connecting the injury in some way to the work place environment, is compensable. *See Miedema,* 551 N.W.2d at 311 (injury sustained while going to the bathroom not connected with employment). A compensable injury still must be related to the working environment or the conditions of employment. *Floyd,* 646 N.W.2d at 107–08.

In this case, on the date North River wrote the letter denying the claim, it knew McIlravy was simply walking at the time of injury, with no additional facts to indi-

cate the work environment or conditions of work contributed in any way to the injury. Although McIlravy was engaged in a work activity, there was nothing to suggest that something about the work environment or condition of work contributed to the injury. Thus, the question is whether North River later became aware there was no reasonable basis to continue to deny the claim.

The evidence submitted at the summary judgment proceeding showed North River received the letter from McIlravy's treating physician six days after it denied the claim. This letter expressed a clear opinion that the injury was work-related, but provided no further explanation. The entire relevant portion of the five-sentence letter stated:

> On August 7, 1997, he injured his right knee while at work. An MRI was obtained, revealing a large medial meniscus tear—this is definitely a work-related injury.

Although the opinion was expressed by Dr. Gehrke with a high degree of certainty, the letter did not include any reasons, medical or otherwise, to support the opinion. Other than the unsupported opinion of the doctor, North River had no additional facts or information to reevaluate its earlier response that the injury was not work-related.

However, North River later received additional information explaining Dr. Gehrke's opinion. This information was obtained during the course of his deposition in February 1998. Dr. Gehrke explained that the injury was work-related because McIlravy was at work, his profession involved heavy lifting activities, and the nature of his profession placed him at greater risk for knee injuries than other professions. The new information North River received from this deposition was that McIlravy was at greater risk of sustaining a knee injury than workers in less labor-intensive professions. This was evidence that the injury sustained by McIlravy was related to " 'the working environment or the conditions of . . . employment.' " [3] *Floyd*, 646 N.W.2d at 107 (citation omitted). It explained, for the first time, why the injury was work-related.

Notwithstanding this new evidence, North River continued to deny the claim. Moreover, it failed to present evidence in the course of the summary judgment proceeding to show that it conducted a further investigation in response to the new evidence. It failed to respond to this new evidence by investigating whether iron workers are more susceptible to knee inju-

---

**3.** We emphasize that the burden is on a claimant to prove both that an injury "arose out of" and "in the course of" employment. *Koehler Elec. v. Wills*, 608 N.W.2d 1, 3 (Iowa 2000); *see also* Iowa Code § 85.3(1) (1999). The "arising out of" element means there must be "a causal relationship between the employment and the injury." *Koehler Elec.*, 608 N.W.2d at 3 (citation omitted). The injury must be a natural incident of the work, meaning the injury is a rational consequence of a hazard connected with the job. *Id.* "In other words, the injury must not have coincidentally occurred while at work, but must in some way be caused by or related to the working environment or the conditions of . . .

employment." *Miedema v. Dial Corp.*, 551 N.W.2d 309, 311 (Iowa 1996). The testimony of the treating physician in this case that the type of work performed by McIlravy placed him at greater risk for the type of knee injury he sustained does not alter the "arising out of" employment legal standard, but is evidence provided to establish the standard in this case. The opinion by the treating physician acknowledges that such an injury can coincidentally occur to workers, but the opinion also expresses the view that it is more probable the injury to McIlravy was causally related to the particular strenuous conditions of his employment.

ries and failed to seek another medical opinion to refute or confirm Dr. Gehrke.

■ Although the new information provided in the deposition did not necessarily render the compensability issue undebatable, it did transform the reasonableness of the continued denial by North River into a jury question.[4] The reasonableness of the denial of a workers' compensation claim by an insurer is a question of law only when the evidence is undisputed and only one inference can be drawn from the evidence. The facts of this case were undisputed, but the inferences were not. Bad faith may be inferred from a flawed investigation, and the facts of this case place the adequacy of the investigation conducted by North River after the deposition of Dr. Gehrke into question. *See Reuter v. State Farm Mut. Auto. Ins. Co.*, 469 N.W.2d 250, 254–55 (Iowa 1991).

We recognize an incomplete investigation will not alone support recovery for bad faith if the insurer nevertheless had a reasonable basis for denial. *Id.* Yet, the failure of North River to investigate in this case went to the very foundation of the basis for its denial. North River previously denied the claim based on the lack of facts to show the injury was work-related, and the deposition of Dr. Gehrke supplied the missing facts. A reasonable inference to be drawn from North River's failure to investigate further is that it knew it had no reasonable basis for denying McIlravy's claim. *See id.* at 254. This inference required the district court to deny the summary judgment motion.

## V. Conclusion.

We conclude the district court properly overruled McIlravy's motion for partial summary judgment on issue preclusion

---

**4.** North River rejected the medical opinion of the treating physician without explanation, and continued to rely upon its fact-based position that the injury only coincidentally occurred to McIlravy while he was at work. However, North River had no medical evidence to support this position, and had knowledge that the only medical evidence in the case rejected the position.

In *Gilbert v. USF Holland, Inc.*, 637 N.W.2d 194 (Iowa 2001), we held that a workers' compensation claim was fairly debatable even though there was uncontested medical evidence that the injury arose from employment. However, in *Gilbert*, the claimant reported two different versions of how his back injury was sustained. The first version reported by the worker was that it occurred as he merely stood up from a table. The second version was that it occurred while he was pulling a dock plate. The medical evidence in the case concerning causation was based on the second version. This meant a reasonable person could accept the medical evidence and still reasonably debate the "arising out of" employment element of the claim by rejecting the version of the facts supporting the medical opinion. Thus, *Gilbert* is distinguishable from this case on the facts.

In this case, the facts concerning how the injury occurred are not in dispute, nor is the medical evidence of causation. While the facts alone do not disclose whether the injury arose out of employment, the additional medical evidence does not support causation. Medical evidence need not be accepted, but it can only be rejected based on valid specific reasons. *See Catalfo v. Firestone Tire & Rubber Co.*, 213 N.W.2d 506, 510 (Iowa 1973). North River offered no reasonable basis to reject this evidence. The treating physician tied the injury to the work environment or conditions of employment. These conditions included repetitive lifting, climbing, and extra weight required to be carried by the worker, as well as the circumstances immediately prior to the injury. The uncontested evidence in the case satisfied the "arising out of" employment element of a workers' compensation claim, and North River's continued denial of the claim could only be grounded on the unexplained rejection of the medical evidence of causation. North River failed to obtain medical evidence to explain why the injury was probably just a coincidence of employment, and not a natural incident of the work performed by McIlravy. Consequently, a jury issue was generated whether or not this denial constituted bad faith.

based on its finding that the issue of North River's reasonable basis for denying McIlravy workers' compensation benefits was not precluded by the reasonable basis determination made through the course of prior proceedings in this dispute. However, we find McIlravy presented substantial evidence that North River did not have a reasonable basis for its denial of his workers' compensation benefits after the deposition was taken. We conclude that the district court erred by granting North River's motion for summary judgment on the reasonable basis determination.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**