# IN THE COURT OF APPEALS OF IOWA

No. 18-1013
Filed July 3, 2019

**FRANKLIN HARRIS,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Des Moines County, Michael J. Schilling, Judge.

Franklin Harris appeals the district court's summary disposition of his actual innocence claim in his application for post-conviction relief. **AFFIRMED.**

Jacob Mason of JL Mason Law, PLLC, Ankeny, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Potterfield and Doyle, JJ.

**POTTERFIELD, Judge.**

Franklin Harris appeals the summary disposition of his actual innocence claim asserted in his third application for postconviction relief (PCR).

## A. Factual Background & Procedural History

The district court summarized the relevant background facts in its order denying Harris's first PCR application:

Harris moved to Burlington, Iowa from Chicago, Illinois with his girlfriend, Ms. Sandra Badger, for employment opportunities. On February 7, 2008, Harris went to work as scheduled, but Ms. Badger did not. Harris returned home after his shift ended around 6:00 a.m. February 8, 2008. Later that morning, around 10:00 or 11:00 a.m., Harris and Ms. Badger argued about money and their relationship. The argument quickly escalated and became very heated.

Harris went to the kitchen, obtained a knife, and returned to the bedroom where the argument was taking place. Harris proceeded to stab Ms. Badger with the knife several times. A witness attempted to intervene but stopped when Harris made threatening motions with the knife toward the witness. The witness left the scene and called 911.

After stabbing Badger, Harris immediately left on foot, taking Ms. Badger's purse with him. Ms. Badger staggered outside to the street where she collapsed. Emergency medical personnel transported Badger to Great River Medical Center in West Burlington, Iowa where she died about an hour later. The police apprehended Harris shortly thereafter and he admitted to stabbing Badger.

Harris was charged with murder in the first-degree on February 8, 2008. Harris later pleaded guilty to second-degree murder on April 21, 2008. An order accepting the guilty plea was entered that same day. Harris was sentenced to a fifty-year prison term on June 2, 2008.

Harris appealed his conviction. The Iowa Supreme Court determined the appeal was frivolous and dismissed it on October 14, 2008. *State v. Harris*, No. 08-1144 (Iowa 2008). Harris filed his first PCR application on November 3, 2008,

alleging his trial counsel did not provide him adequate advice related to his guilty plea. He did not raise an actual innocence claim. The district court denied his application on all grounds, and this court affirmed. *Harris v. State*, No. 10-2035, 2013 WL 5758164, at *3 (Iowa Ct. App. Oct. 23, 2013).

On February 10, 2014, Harris filed a pro se motion to "vacate the judgement." He claimed new evidence showed an intervening cause of death when emergency medical personnel pierced Badger's lung while treating her. In support of this allegation, Harris submitted the affidavit of a person named Jack Hays, who appears to have been an inmate at the same penitentiary facility as Harris. The affidavit claims Hays "has an education as a paralegal" and that Hays discovered an emergency medical services (EMS) report created on February 8, 2008 allegedly showing Badger did not have a lung injury prior to being treated by medical staff. The affidavit concludes "It is this paralegal's professional opinion, from reviewing thousands of pages of homicide paperwork, that the decedent was killed by the hospital due to being sedated and the needless puncturing of her lung." The disposition of this motion is not reflected in the record.

Harris filed his second PCR application on October 29, 2014. The second PCR application reiterated the arguments made in both the first PCR application and in the motion to vacate judgement. The second PCR application additionally alleged Harris's appellate and post-conviction counsel were ineffective for failing to find both the EMS report and a trauma assessment form detailing which drugs were administered to Badger when she was treated by medical staff, and that Harris is actually innocent. The State moved for summary disposition on March

18, 2015, arguing the second PCR was time-barred under Iowa Code section 822.3 (2014), which prescribes a three-year limitations period to bring PCR applications. The State additionally argued that the EMS report was not "a ground of fact or law that could not have been raised within the applicable time period" that may form the basis of a PCR application after the three-year limitation-period has run. *See id.* The district court granted the State's motion on April 6, 2016. The court determined the EMS report was not new evidence:

> The first issue is whether [the EMS report] has information that could not have been raised within the time period. There is nothing other than a statement that the applicant did not see or that a described paralegal did not see it before. The mere statement that he did not see it before is not sufficient to show that it was in fact not available to him.

Harris appealed the district court's ruling and this court affirmed. *Harris v. State*, No. 16-0637, 2017 WL 1278296, at *1 (Iowa Ct. App. Apr. 5, 2017). We determined the EMS report was "handed over . . . on February 25th, 2008" and "[Harris] has been in possession of [the EMS report] for seven years." *Id.* We concluded Harris's second PCR petition was time-barred under Iowa Code section 822.3. *Id.*

Harris filed his third PCR application on January 19, 2018. Harris again claimed he had not received effective assistance of counsel from his trial, appellate, or post-conviction counsel, and that the EMS report constituted new evidence. Harris again claimed actual innocence. The State moved for summary disposition on February 5, 2018. The district court issued its ruling on the motion on May 25, 2018, and granted the State's motion for summary dismissal on all claims, including the statute of limitations and ineffective

assistance of counsel—except the claim of actual innocence. The district court did not grant the State's motion for summary disposition on the actual innocence claim because of a recent change in the law on actual innocence claims in PCR petitions. *See Schmidt v. State*, 909 N.W.2d 778, 781 (Iowa 2018) ("We now hold the Iowa Constitution allows freestanding claims of actual innocence, so applicants may bring such claims to attack their pleas even though they entered their pleas knowingly and voluntarily.").

The district court granted the parties until the end of May 2018 to file additional arguments or evidence relating to Harris's actual innocence claim and the *Schmidt* decision. Harris submitted the EMS report and the trauma assessment form. Harris also filed an amendment to his third PCR, and made additional allegations:

> 2. An inexperienced doctor 'intubated' the decedent's lungs. This was not necessary. The wound did not reach all the way to the lung and the lung was only pierced **after** the Doctor had 'intubated' the decedent. In fact, the Doctor's negligence was so intervening that **another** senior Doctor was called in. This was with held [sic] from the family, the prosecution, and the defense. [The trauma assessment form] shows at 11:41 a.m. the Doctor pierced a Lung with a tube. [The EMS report] shows the decedent <u>was</u> fine.

The district court considered the merits but then granted the State's motion for summary disposition of the actual innocence claim on June 6, 2018. The court concluded Harris's allegations were "simply bald assertions not supported by fact," which did not support his claim of actual innocence, and "Harris has not offered any 'evidence' that the victim's lung was actually pierced or that there was a cause of death different than that resulting from the stab wounds inflicted by him upon his former girlfriend." Harris appealed from the

order granting summary disposition of the claims regarding previously litigated issues, ineffective assistance of counsel and the statute of limitations and the separate order granting summary disposition of his actual innocence claim after ruling on the merits. However, he addresses in his brief on appeal only the actual innocence claim. Issues not briefed are considered waived. *Baker v. City of Iowa City*, 750 N.W.2d 93, 102–03 (Iowa 2008); *see also* Iowa R. App. P. 6.903(2)(g)(3) ("Each division shall include . . . . An argument containing the appellant's contentions and the reasons for them with citations to the authorities relied on and references to the pertinent parts of the record . . . . Failure to cite authority in support of an issue may be deemed waiver of that issue."). We will, therefore, only consider the district court's denial of Harris's actual innocence claim.

## B. Standard of Review

The Iowa Supreme Court recently stated the standard of review for summary disposition of PCR applications:

> "We apply our summary judgment standards to summary disposition of postconviction-relief applications." *Moon* [v. State], 911 N.W.2d [137,] 142 [(Iowa 2018)]. "[F]or a summary disposition to be proper, the State must be able to prevail as if it were filing a motion for summary judgment in a civil proceeding." *Schmidt v. State*, 909 N.W.2d 778, 784 (Iowa 2018).
>
> A court examining the propriety of summary judgment must "view the entire record in the light most favorable to the nonmoving party." *Bass v. J.C. Penney Co.*, 880 N.W.2d 751, 755 (Iowa 2016). The court must also indulge on behalf of the nonmoving party every legitimate inference reasonably deduced from the record in an effort to ascertain the existence of a fact question. *Bagelmann v. First Nat'l Bank*, 823 N.W.2d 18, 20 (Iowa 2012); *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000).
>
> Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R.

Civ. P. 1.981(3); *Banwart v. 50th Street Sports, L.L.C.*, 910 N.W.2d 540, 544 (Iowa 2018). "We examine the record to determine whether a material fact is in dispute . . . ." *Ranes v. Adams Labs., Inc.*, 778 N.W.2d 677, 685 (Iowa 2010). "Even if the facts are undisputed, summary judgment is not proper if reasonable minds could draw different inferences from them and thereby reach different conclusions." *Banwart*, 910 N.W.2d at 544–45 (quoting *Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 841 (Iowa 2005)).

*Linn v. State*, ___ N.W.2d ___, 2019 WL 2482511, at *9–10 (Iowa 2019) (fourth alteration in original). "The goal of summary disposition in PCR proceedings 'is to provide a method of disposition *once the case has been fully developed by both sides.*'" *Id.* at *31 (quoting *Manning v. State*, 654 N.W.2d 555, 559 (Iowa 2002)).

An actual innocence claim, recognized in *Schmidt v. State*, 909 N.W.2d 778, 795 (Iowa 2018), is based on the Iowa Constitution. We review constitutional errors de novo. *See Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016) (applying de novo review to claims under Article I, section 10 of the Iowa Constitution).

## C. Analysis

### a. Summary Disposition

First we examine the district court ruling to determine if it granted summary disposition viewing the record in the light most favorable to Harris, and indulging Harris every legitimate inference deduced from the record. *Linn*, WL 2482511, at *9. We find the district court carefully reviewed the record under the standards for summary disposition and correctly concluded summary disposition was proper.

The "evidence" submitted by Harris in support of his claim of actual innocence amounts to nothing more than bald assertions not supported by credible evidence. Harris has not offered any "evidence" that the victim's lung was actually pierced or that there was a cause of death different than that resulting from the stab wounds inflicted by him upon his former girlfriend. Similarly, Harris has failed to attach any affidavits or statements by medical personnel that a physician pierced the victim's lung or otherwise caused her death. Harris has woefully failed to establish the relevancy of [the EMS report] and [the trauma assessment form] to his conviction. Simply put, Harris has failed to present any credible evidence supporting his claim of actual innocence.

We agree with the district court's assessment. When given additional opportunity to submit evidence related to his actual innocence claim, Harris submitted only the EMS report and the trauma assessment form. These documents do not support some of Harris's allegations in his amendment to the third PCR and directly contradict others. Harris claims "[a]n inexperienced doctor 'intubated' the decedent's lungs." Neither document discusses at all the qualifications of the medical personnel who treated Badger. Harris also claims "[the EMS report] shows the decedent was fine." The EMS report describes Badger as having serious injuries when found by emergency medical personnel:

Pt is laying supine and is in obvious distress with blood soaked clothes. . . . Pt presents with obvious respiratory distress that is tolerated only by sitting upright. . . . Pt presents with a deep stab wound to the right side of her chest . . . . Pt also has a deep wound to her right arm with venous bleeding.

Harris further claims the trauma assessment form shows doctors had "pierced a lung with a tube." The form only shows that Badger was given "150mg / 40mg estimated IV pre intubation" and that a chest tube was "inserted." It does not say Badger's lung was pierced. Finally, Harris claims both the EMS report and the trauma assessment form were withheld from the prosecution, defense counsel,

and himself during the original case. We have already determined the EMS report was provided to Harris's counsel before Harris pled guilty, and that producing the report to his attorney was sufficient to put him on notice of it. *Harris v. State*, No. 16-0637, 2017 WL 1278296, at *1 (Iowa Ct. App. Apr. 5, 2017). Even if a panel of our court had not determined the EMS had already been provided to Harris before he pleaded guilty, Harris has provided no evidence corroborating his claim the documents were withheld.

"A legitimate inference is 'rational, reasonable, and otherwise permissible under the governing substantive law.'" *Banwart v. 50th Street Sports, L.L.C.*, 910 N.W.2d 540, 545 (Iowa 2018) (quoting *McIlravy v. River Ins. Co.*, 653 N.W.2d 323, 328 (Iowa 2002)). "[A]n inference is not legitimate if it is 'based upon speculation or conjecture.'" *Id.* (alteration in original) (quoting *Butler v. Hoover Nature Trail, Inc.*, 530 N.W.2d 85, 88 (Iowa Ct. App. 1994)). "Thus, '[s]peculation is not sufficient to generate a genuine issue of fact.'" *Id.* (quoting *Hlubek v. Pelecky*, 701 N.W.2d 93, 96 (Iowa 2005)). After reviewing the evidence, we conclude Harris's allegations that medical staff caused Badger's death is speculation and conjecture, and insufficient to generate a genuine issue of material fact. The district court properly granted the State's motion for summary disposition.

### b. Actual Innocence

The district court did not initially grant the State's motion for summary disposition on Harris's actual innocence claim because the Iowa Supreme Court decided *Schmidt v. State* while the court was considering the motion. *Schmidt* held that PCR applicants can make freestanding claims of actual innocence,

even if the applicant had previously pleaded guilty. *Schmidt*, 909 N.W.2d at 795. But to succeed on a freestanding actual innocence claim, "the applicant must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, including the newly discovered evidence." *Id.* at 797.

The district court examined the record and concluded Harris had failed to meet his burden. On our de novo review, we reach the same conclusion. For the reasons described above, we do not find the EMS report, the trauma assessment form, or the Hays affidavit and allegations in the amendment to the third PCR application based off those documents sufficient to meet Harris's burden of showing actual innocence by clear and convincing evidence.

**AFFIRMED.**