# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2835

_____

The Weitz Company, LLC,                    *
                                           *
              Appellant,                    *
                                           *    Appeal from the United States
       v.                                   *    District Court for the Southern
                                           *    District of Iowa.
Lloyd's of London, also known as           *
Underwriters at Lloyd's; Lexington         *
Insurance Company; Continental             *
Casualty Company, also known as            *
CNA; United States Fire Insurance          *
Company,                                   *
                                           *
              Appellees.                    *

_____

Submitted: March 12, 2009
Filed: August 4, 2009

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

The Weitz Company ("Weitz"), an Iowa limited liability company, filed this diversity action for breach of contract and bad-faith denial of an insurance claim against Lloyd's of London, Lexington Insurance Company, Continental Casualty Company, and United States Fire Insurance Company (the "Insurers"). The district court granted summary judgment for the Insurers and dismissed Weitz's claims,

holding that Weitz failed to provide timely notice of loss and the Insurers had an objectively reasonable basis for denying Weitz's claim. For the reasons set forth below, we reverse and remand.

I.

In January 2001, CC-Aventura, Inc., an affiliate of H. Group Holdings, Inc. ("Hyatt"), hired Weitz as the general contractor to build a luxury retirement community in Aventura, Florida (the "Project"). Hyatt agreed to purchase and maintain "All Risks" property insurance that protected Weitz's interests in its work at the Project site. As part of its coverage portfolio, Hyatt obtained commercial property policies (the "Policies") from the Insurers to cover all of the corporation's real and personal property, including the Project. Weitz was not a named insured in the Policies.[1] To establish that it had obtained the required insurance, Hyatt gave Weitz an "Evidence of Property Insurance" certificate from Hyatt's broker, Marsh USA, Inc. The certificate listed "BUILDERS RISK COVERAGE 19333 WEST COUNTRY CLUB DRIVE AVENTURA, FL 33180," which is the Project site's address. (J.A. 11.) After repeated requests over a three-year period, Hyatt finally furnished Weitz with copies of the actual Policies in June 2004.

Severe rains caused water damage to the Project site in June 2002. Hyatt representatives Tim Reidy and Juan Rodriguez, who visited the Project regularly,

_____

[1] In a previous ruling in this case, the district court concluded that Weitz is a third-party beneficiary under the "New Construction, Alteration and Repairs" clause in Section I of the Policies, which reads in part: "This policy also covers new buildings and structures at any location while in the course of construction and when completed . . . including . . . [t]he interests of contractors and subcontractors in such property to the extent the Insured has assumed liability therefore." (J.A. 31.) The Insurers do not dispute this decision. Thus, Weitz has the right to sue under the Policies. See Weitz Co. v. Lloyd's of London, et al., No. 4:04-cv-90353, 2004 WL 3158070, at *5 (S.D. Iowa Dec. 6, 2004).

discovered the damage soon after water entered the construction site. However, Reidy and Rodriguez did not inform Hyatt's Risk Management Department of the damage. Meanwhile, Weitz took immediate steps to repair the water damage. In November 2002, Weitz informed Hyatt that Weitz was compiling costs associated with repairing the damage and that Weitz planned to submit a claim against the Policies. On December 10, 2002, Weitz sent a claim letter to Reidy that stated:

> We hereby request that the attached Insurance claim for water damage be submitted to your Builders Risk Carrier. The attached package contains all costs associated with the rainwater damage that occurred at the Classic Residence by Hyatt project located at 19333 West Country Club Drive, Aventura, FL. The water damage was a result of extremely high volume, windy rains during the month of June 2002. The submission of this package has been delayed to allow [t]he Weitz Company and the subcontractors the necessary time to compile all costs related to this claim. Please submit at your earliest convenience.

(Id. at 467.) On December 23, 2002, Reidy forwarded Weitz's notice of the water damage claim to Dan Corrigan at GAB Robins North America, Inc. ("GAB"), the claims adjuster named in the Policies. Hyatt's Risk Manager, David Mikulina, was copied on the letter to GAB. Consequently, both the Insurers and Hyatt's Risk Management Department first received notice of the loss on the same day.

Reidy, Mikulina, and Corrigan conversed via telephone regarding the water damage claim and the state of construction at the Project when the loss occurred. Reidy told Corrigan that the structure was not enclosed, watertight, or on schedule, and that problems existed with materials and workmanship. GAB did not visit the Project site, view photographs of the damaged property, or discuss the claim with Weitz. Instead, GAB only discussed the claim with Reidy and Mikulina. On February 28, 2003, Corrigan informed Hyatt, in writing, that the Policies did not cover the water damage to the Project for reasons including improper construction and failure to protect the property. Corrigan's letter did not claim that Weitz failed to

provide timely notice of loss.  However, the letter contained language reserving any rights or defenses the Insurers may have had under the Policies or the law.  The Policies' Notice of Loss provision reads, in relevant part:

> Any loss or damage insured hereunder in excess of $10,000 shall be reported in writing with full particulars to Marsh USA Inc., 500 West Monroe, Chicago, Illinois 60661 for transmittal to this Company for adjustment as soon as practicable after it becomes known to the Insured's [Hyatt's] Risk Management Department.  The Insured may immediately make all necessary repairs or replacement. . . . GAB Robins North America[,] Inc. will be assigned for loss adjustments under this policy.

(Id. at 43.)

Reidy and Mikulina discussed GAB's findings with Corrigan and concurred with its decision to deny coverage.  In March 2003, Hyatt notified GAB that Hyatt no longer wished to pursue the water damage claim.  Hyatt did not inform Weitz of this development.  Because the Insurers denied the claim, Weitz suffered the entire loss of $3,430,893.74 under the terms of its construction contract.  Hyatt owed nothing. If the Insurers had granted the claim, Hyatt would have had to pay a $250,000 deductible per occurrence under the terms of the Policies.

On July 7, 2004, Weitz sued the Insurers for breach of contract and for bad-faith denial of an insurance claim.  The Insurers moved for summary judgment on both of Weitz's claims. The Insurers argued that Illinois had the most significant relationship to the Policies and, therefore, Illinois law should apply in this case. Weitz argued that Iowa or Florida law applied to its breach-of-contract claim and Iowa law applied to its bad-faith denial claim.  The Insurers asserted that Weitz's claim for breach of contract failed because Weitz did not give timely notice of loss to the Insurers.  They also argued that Weitz's claim for bad-faith denial failed because Illinois law does not recognize a bad-faith denial cause of action.  They further asserted that, even if Iowa

law applied, Weitz could not satisfy the elements of a bad-faith denial claim because the issue of coverage was "fairly debatable." Weitz responded by arguing that it had complied with the Policies' notice-of-loss provision and established a prima facie case of bad-faith denial under Iowa law.

The district court granted summary judgment for the Insurers. On Weitz's breach-of-contract claim, the district court found that Illinois law applied because Illinois had the most significant relationship to the transaction and the parties. The court noted that Hyatt did not procure the Policies specifically for the Project in Florida; instead, the Policies covered all of Hyatt's property in the United States and Puerto Rico. The court further noted that the Insurers issued the Policies to Hyatt in Illinois, negotiations between Hyatt and the Insurers took place in Illinois, endorsements were entitled "Illinois Changes," complaints were to be lodged with the Illinois Department of Insurance, Marsh USA and GAB were both located in Illinois, and notice of loss was to be sent to Marsh USA in Illinois. The court determined that the Policies' notice-of-loss provision required Weitz to give the Insurers "notice of loss 'as soon as practicable' *after the loss or damage became known*." Weitz Co. v. Lloyd's of London, et al., No. 4:04-cv-90353, slip op. at 15 (S.D. Iowa Mar. 31, 2008) (emphasis added). The district court ruled that Weitz's claim for breach-of-contract claim failed because there was no genuine issue of material fact that "Weitz failed to give the Insurers notice of its claim for water damage within a reasonable time or 'as soon as practicable' as required by the [P]olicies." Id. at 18.

Though the district court believed its conclusion on the notice-of-loss issue rendered moot Weitz's claim for bad-faith denial, the court briefly addressed the claim. The court decided that, even "when evaluated under Iowa law as urged by Weitz," its claim failed because "the Insurers had an objectively reasonable basis for not paying the claim and the record is absent of specific facts showing the Insurers knew or had reason to know that the denial was without basis." Id. at 25. In so

holding, the court emphasized that "Hyatt representatives agreed with Corrigan's assessment and advised Corrigan that the claim would not be pursued." Id. at 26.

## II.

Weitz contends the district court erred in applying Illinois law to Weitz's breach-of-contract claim. We review de novo the district court's choice-of-law determination. St. Paul Fire & Marine Ins. Co. v. Bldg. Constr. Enters., Inc., 526 F.3d 1166, 1168 (8th Cir. 2008) (quotation omitted). Because our analysis of the merits of Weitz's breach-of-contract claim merely involves interpreting the plain, unambiguous language of the Policies' notice-of-loss provision, we do not need to conduct a choice-of-law analysis regarding this claim, see Modern Equip. Co. v. Cont'l W. Ins. Co., 355 F.3d 1125, 1128 n.7 (8th Cir. 2004) ("If there is not a true conflict between the laws . . . on the pertinent issue, then no choice-of-law is required."). Florida, Illinois, and Iowa each follow the general rule that, in the absence of ambiguity, courts must enforce the plain language of provisions in insurance contracts.[2] Therefore, regardless of which state's law applies, our interpretation and application of the Policies' notice-of-loss provision will be the same.

On the merits of its breach-of-contract claim, Weitz argues that the district court erred in holding that Weitz's insurance claim was barred under the Policies' notice-of-

---

[2]See Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla. 2003) ("[W]e must follow the guiding principle that this Court has consistently applied that insurance contracts must be construed in accordance with the plain language of the policy."); Country Mut. Ins. Co. v. Livorsi Marine, Inc., 856 N.E.2d 338, 343 (Ill. 2006) ("If the words used in the [insurance] policy are unambiguous, they are given their plain, ordinary, and popular meaning."); LeMars Mut. Ins. Co. v. Joffer, 574 N.W.2d 303, 307 (Iowa 1998) ("The cardinal principle in the construction and interpretation of insurance policies is that the intent of the parties at the time the policy was sold must control. Except in cases of ambiguity, the intent of the parties is determined by the language of the policy." (citation omitted)).

loss provision. Specifically, Weitz believes it complied with the plain language of the provision, which required providing notice of loss "as soon as practicable after it becomes known to the Insured's [Hyatt's] Risk Management Department." (J.A. 43.) The Insurers argue that Weitz did not advance this plain-language argument in the district court; therefore, the issue is waived on appeal. Further, the Insurers assert that adopting Weitz's interpretation would produce an absurd result in which a third-party beneficiary could delay giving notice for years as long as Hyatt's Risk Management Department remained unaware.[3]

Weitz has not waived its ability to argue that it complied with the plain language of the notice-of-loss provision. "Although, as a general rule, we do not consider issues not presented to the district court, a blanket statement condemning new arguments is far too broad." Universal Title Ins. Co. v. United States, 942 F.2d 1311, 1314 (8th Cir. 1991) (quotation omitted). "The real question should be whether [Weitz's] new argument is such as to raise a new issue. . . . [I]t would be in disharmony with one of the primary purposes of appellate review were we to refuse to consider each nuance or shift in approach urged by a party simply because it was not similarly urged below." Id. (quotation omitted). In the district court, Weitz argued that it had substantially complied with the notice-of-loss provision by giving notice within a reasonable time. On appeal, Weitz still contends it complied with the notice-of-loss provision but asserts that timeliness should be measured from when Hyatt's Risk Management Department learned of the loss, not when Weitz discovered the loss. Although it certainly constitutes a "shift in approach," Weitz's argument does not "raise a new issue" on appeal. Id. Indeed, the timeliness of Weitz's notice

_____

[3]We decline the Insurers' invitation to ignore the Policies' plain language in order to avoid what they perceive to be an "absurd result." If the Insurers believed their own policy language was absurd, then they should have drafted different language. See, e.g., Montgomery Ward & Co. v. Home Ins. Co., 753 N.E.2d 999, 1004 (Ill. App. Ct. 2001) (the insurer "easily could have refused to have included this type of notice requirement in the policy" because "[i]nsurance carriers are certainly sophisticated enough and wield sufficient bargaining power to protect their interests").

was squarely at issue below. See Weitz Co., No. 4:04-cv-90353, slip op. at 8-9, 15-23. Moreover, even if Weitz's shift in approach did raise a new issue, "[w]e also have the discretion to consider an issue for the first time on appeal where the proper resolution is beyond any doubt . . . or when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case." Universal Title, 942 F.2d at 1314-15 (quotation omitted). Thus, we will consider Weitz's argument on appeal.

"We review de novo the district court's interpretation of provisions in an insurance contract, as well as its ultimate decision to grant summary judgment." Transcon. Ins. Co. v. W.G. Samuels Co., 370 F.3d 755, 757 (8th Cir. 2004). We have already established that, under Florida, Illinois, or Iowa law, we must enforce the Policies' plain, unambiguous language. See Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla. 2003); Country Mut. Ins. Co. v. Livorsi Marine, Inc., 856 N.E.2d 338, 343 (Ill. 2006); LeMars Mut. Ins. Co. v. Joffer, 574 N.W.2d 303, 307 (Iowa 1998). The provision in question requires that notice of loss be given "as soon as practicable *after it becomes known to the Insured's Risk Management Department*" (J.A. 43 (emphasis added)), not merely "after the loss or damage *became known*" as the district court found, Weitz Co., No. 4:04-cv-90353, slip op. at 15 (emphasis added). The Insurers do not contend that this language is ambiguous. Nor do they dispute that Hyatt is the "Insured" under the Policies or that Hyatt's Risk Management Department did not receive notice of the loss until December 23, 2003—the same day the Insurers first received notice.

In sum, under the Policies' plain language, timeliness of notice of loss is measured from when Hyatt's Risk Management Department became aware of the loss, not when Weitz or other Hyatt personnel discovered the damage.[4] The undisputed

---

[4]Even under Illinois law, which the Insurers advocated and the district court applied, state and federal courts have enforced language similar to the Policies' notice-of-loss provision. See Keystone Consol. Indus., Inc. v. Employers Ins. Co. of

-8-

facts demonstrate that the Insurers and Hyatt's Risk Management Department received notice of loss on the same day. Therefore, there can be no genuine issue of material fact that Weitz complied with the Policies' notice-of-loss provision. We reverse the district court's order granting summary judgment for the Insurers on Weitz's breach-of-contract claim.

III.

On its bad-faith denial claim, Weitz argues that the district court erred in granting summary judgment because genuine issues of material fact remain as to whether the Insurers' denial was reasonable under the circumstances. "We review a district court's grant of summary judgment de novo. Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. We must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party." Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007) (citations omitted).

Weitz urged the district court to apply Iowa law to this tort claim, but the Insurers advocated the application of Illinois law. Iowa recognizes an independent cause of action for bad-faith denial. See United Fire & Cas. Co. v. Shelly Funeral Home, Inc., 642 N.W.2d 648, 657 (Iowa 2002). Illinois does not maintain an independent cause of action for bad faith. See Cramer v. Ins. Exch. Agency, 675 N.E.2d 897, 904 (Ill. 1996). However, an Illinois statute provides an extra-contractual remedy for bad faith that piggybacks on a plaintiff's action for breach of an insurance

Wausau, 470 F. Supp. 2d 873, 884 (C.D. Ill. 2007) (applying Illinois law and enforcing provision requiring notice "as soon as practicable" after the "insurance manager or other person designated by the named insured for that purpose has actual knowledge of the occurrence"); Montgomery Ward & Co. v. Home Ins. Co., 753 N.E.2d 999, 1004 (Ill. App. Ct. 2001) (enforcing provision requiring notice "as soon as possible after the accident has been brought to the notice of the insurance department of the insured at its head office in Chicago").

-9-

contract.  See 215 Ill. Comp. Stat. 5/155(1).[5]  Therefore, although Illinois and Iowa law clearly conflict on this issue, both states provide a potential remedy for bad-faith denial.  Believing it unnecessary to conduct a choice-of-law analysis, the district court concluded that Weitz's claim "fail[ed] as a matter of law even under the [Iowa] case law Weitz urges the court to apply."  Weitz Co., No. 4:04-cv-90353, slip op. at 24.  The district court never decided whether Weitz's claim failed under Illinois law.  On remand, the court will need to determine which state's law applies before Weitz's bad-faith denial claim goes to trial.

Under Iowa law, "to establish a claim for [] bad faith, the insured must prove two facts:  (1) [] the insurer had no reasonable basis for denying benefits under the policy and, (2) the insurer knew, or had reason to know, that its denial was without basis.  The first element is objective, the second subjective."  Shelly Funeral Home, 642 N.W.2d at 657 (citation omitted).  However, "[b]ad faith may be inferred from a flawed or inadequate investigation by the insurer."  Buhmeyer v. Case New Holland, Inc., 446 F. Supp. 2d 1035, 1041 (S.D. Iowa 2006) (citing McIlravy v. N. River Ins.

---

[5]215 Ill. Comp. Stat. 5/155(1) reads:

In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
> (b) $60,000;
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

Co., 653 N.W.2d 323, 333 (Iowa 2002)). "As such, '[i]t is appropriate, in applying the test, to determine whether a claim was properly investigated and whether the results of the investigation were subjected to a reasonable evaluation and review.'" Id. (quoting Dolan v. Aid Ins. Co., 431 N.W.2d 790, 794 (Iowa 1988)).

Viewing the evidence in the light most favorable to Weitz and drawing all reasonable inferences therefrom, see Carraher, 503 F.3d at 716, we hold that the district court erred in granting summary judgment for the Insurers on Weitz's bad-faith denial claim under Iowa law. Although it acknowledged that GAB did not conduct an independent investigation of Weitz's claim, the district court found that this was "offset by Weitz'[s] failure to provide timely notice [of loss] to the Insurers and GAB." Weitz Co., No. 4:04-cv-90353, slip. op. at 25. This conclusion, of course, was erroneous. See supra Part II (holding that Weitz gave timely notice of loss). The court also emphasized that, in phone conversations with GAB, Hyatt described alleged deficiencies in Weitz's work, agreed with GAB's finding of no coverage, and told GAB that the claim would not be pursued. Finally, the court reasoned that further investigation by GAB would not have been fruitful because Weitz had already repaired the damage. However, the district court failed to acknowledge that GAB never talked to anyone from Weitz about its claim or that, because of its deductible, Hyatt had at least a $250,000 motive to recommend that coverage be denied.

Though the alleged deficiencies in Weitz's work may turn out, after trial, to have been a reasonable basis for denying the claim, GAB's exclusive reliance on Hyatt's representations is quite troubling in light of Hyatt's financial incentives in this case. When it found no genuine issue of material fact concerning Weitz's bad-faith denial claim, the district court failed to view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to Weitz—the nonmoving party. See Carraher, 503 F.3d at 716.

-11-

## IV.

Accordingly, we reverse the district court's decisions granting summary judgment for the Insurers on Weitz's claims for breach of contract and bad-faith denial, and we remand for further proceedings consistent with this opinion.

_____