# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-1522

_____

Ronald Tim Bacon

*Plaintiff - Appellant*

v.

Liberty Mutual Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Council Bluffs

_____

Submitted: March 13, 2012
Filed: August 6, 2012
[Published]

_____

Before MELLOY, SMITH, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Ronald "Tim" Bacon appeals the district court's[1] grant of summary judgment to Liberty Mutual Insurance Company ("Liberty Mutual") on Bacon's fraudulent-misrepresentation and breach-of-contract claims. We affirm.

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

## I. *Background*

"Bacon's suit against Liberty Mutual arises out of the settlement of a personal injury lawsuit against Ridgetop Holdings, Inc. ('Ridgetop'), the parent company of Bacon's employer, Davis Erection Company, Inc. ('Davis Erection')." *Bacon v. Liberty Mut. Ins. Co.*, 575 F.3d 781, 782 (8th Cir. 2009).

On July 28, 2003, Bacon, a Nebraska resident, worked for Davis Erection on a construction project in Omaha, Nebraska. Bacon suffered severe injuries in a work-related accident at the construction site.

Liberty Mutual, a nationwide insurance company doing business in Iowa and Nebraska, provided Davis Erection with commercial liability and workers' compensation insurance under an Owner Controlled Insurance Program (OCIP)—or "wrap around" insurance policy—for all participating contractors at the construction site. This insurance covered Bacon's workers' compensation benefits, which were administered under Nebraska law. In 2006, Bacon filed a personal-injury complaint in Nebraska state court against several entities, including Ridgetop; Kiewit Construction Company, the general contractor at the construction site; and DBI-Sala, a/k/a DB Industries, Inc., the manufacturer of the safety harness that Bacon was wearing at the time of the accident. The complaint additionally named Davis Erection and Liberty Mutual as defendants for the sole purpose of subrogation of Bacon's workers' compensation benefits.

In June 2006, Bacon moved to Iowa. Liberty Mutual contributed $100,000 to the purchase of his home. Since May 2006, Liberty Mutual has made weekly disability payments to Bacon.

In August 2007, Liberty Mutual and Bacon's attorney, Jim Harris, began negotiating a settlement of Liberty Mutual's workers' compensation rights. On August 1, 2007, Harris wrote to Liberty Mutual's attorneys in the Nebraska action, stating,

"There is no subrogation claim against Kiewit or Ridgetop. The waiver of subrogation clause in the contract along with the fact that Liberty cannot subrogate against a party to who[m] they owe a duty are dispositive of this matter." On August 27, 2007, Linda Ward, Liberty Mutual Senior Technical Claims Specialist, responded:

> We are in agreement that we have no "recovery" rights as to any settlement monies from Kiewit or Ridgetop. However, although we can not recover from those entities, we would still have a claim to Statutory Credit/offset against any net to Mr. Bacon from those entities. It goes to the "no double recovery rule[,"] and to the State's Statutes as to our future obligations to Mr. Bacon post his recovery from 3rd party monies.

Bacon and Liberty Mutual never reached agreement on settlement of lien-recovery amounts and litigation in preparation for trial continued.

Immediately prior to trial, on January 13, 2008, Ridgetop agreed to settle its portion of Bacon's suit. Harris sent Ridgetop's counsel an email clarifying, *inter alia*, that "inasmuch as Ridgetop and Davis Erection are interrelated corporations, they will each waive any and all claims, cross-claims, subrogation, reimbursement or otherwise against each other and their insurers." On January 29, 2008, Ridgetop's counsel replied that "[t]his language will not work."

In a series of emails from January 29, 2008 to February 22, 2008, Liberty Mutual's counsel sought Bacon's and Ridgetop's settlement amount, so that Liberty Mutual could decide whether to assert a lien, set-off, or credit. Bacon's and Ridgetop's counsel refused to disclose the settlement amount, citing to a confidentiality agreement. Additionally, they asserted that the settlement amount was irrelevant to whether Liberty Mutual had a lien. Bacon's counsel relied upon Ward's prior letter and took the position that Liberty Mutual had already confirmed that it had no interest in the settlement proceeds. Liberty Mutual argued that refusal to divulge the settlement amount made it impossible for Liberty Mutual to calculate its rights to a

statutory credit/offset on future obligations. During this exchange of emails, Bacon's counsel shared Ward's August 27, 2007 letter with Ridgetop's counsel. Ridgetop's counsel then asked Liberty Mutual to confirm the representation made in Ward's August 27, 2007 letter that "Liberty Mutual . . . asserts no subrogation lien or any other form of claim over the settlement proceeds to be paid by Zurich and AIG on behalf of Ridgetop Holdings." Liberty Mutual maintained that knowledge of the settlement amount was relevant to its "claim of a credit."

On February 28, 2008, Bacon filed a declaratory-judgment action in Douglas County, Nebraska, asking the court to declare that Liberty Mutual waived its right to subrogation against the settlement proceeds from Ridgetop. Bacon requested that the court declare that no subrogation right exists against the parent company of an insured, either past or future. On March 14, 2008, Liberty Mutual answered that it had a "bona fide workers' compensation lien entitling [it] to statutory credit for the funds netted by [Bacon] through the settlement agreement by and between [Bacon] and Ridgetop Holdings, Inc." Bacon did not seek damages. The lawsuit was dismissed without being settled or adjudicated.

While the declaratory-judgment action was still pending, but after Liberty Mutual had answered the complaint in that action, Bacon filed the instant case against Liberty Mutual in federal district court in Iowa, "asserting a claim of fraudulent misrepresentation, for which he sought punitive damages, and a claim of breach of contract." *Bacon*, 575 F.3d at 782. Bacon argued that

> Liberty Mutual's answer to his complaint in the Nebraska declaratory judgment action constituted a knowing misrepresentation made with the intent to deceive. His breach-of-contract claim rested on his allegation that Liberty Mutual's claim representative created a binding contract not to pursue any claim to the settlement proceeds when she made the alleged representation that Liberty Mutual waived any such claim.

*Id*. at 782–83.

Liberty Mutual moved to dismiss the complaint "on the grounds of forum non conveniens and that Nebraska law, which does not permit punitive damages for fraudulent misrepresentation, should apply under the applicable choice-of-law rules." *Id*. at 783. The district court concluded that Nebraska had a greater interest in deciding the suit than Iowa and granted the motion to dismiss on the ground of forum non conveniens. *Id*. The court did not address the choice-of-law issue. *Id*.

Bacon appealed, and we reversed the district court, holding that the doctrine of forum non conveniens did not apply to permit the district court to dismiss the action, rather than transfer venue, and, even if transfer to another federal forum were unavailable, the district court abused its discretion in dismissing Bacon's claims. *Id*. at 783–85.

Bacon had also asked this court to determine whether Iowa or Nebraska law governed the suit in Iowa because "[o]nly under Iowa law will he be able to recover punitive damages for his fraudulent misrepresentation claim." *Id*. at 785. Because the district court dismissed the suit and never reached the choice-of-law question, "we decline[d] to decide which state's law applies to this suit." *Id*. We directed the district court that, upon remand, it "should use Iowa's choice-of-law rules to determine whether Iowa or Nebraska law will govern this suit." *Id*.

On remand, the district court concluded that Nebraska law applied. The court characterized Bacon's fraudulent-misrepresentation claim as based "on Liberty Mutual's refusal to reconfirm its agreement that it had no recovery rights as to any settlement monies from Ridgetop and on its Answer in the Declaratory Judgment action, in which Liberty Mutual asserted that it had 'a bona fide workers' compensation lien.'" The court concluded that mere silence cannot constitute a misrepresentation in the absence of a duty to disclose information and found that Bacon failed to cite any "authority demonstrating the existence of such a duty." The court failed "to see how a party's failure to reconfirm a contract, the import and

-5-

meaning of which it disputes, can serve as a basis for a fraud claim." The court explained that Bacon's fraud claim was based on "Liberty Mutual's refusal to agree with his interpretation of an agreement purportedly entered into by the parties" and that "[s]uch refusal does not, as a matter of law, amount to fraud." The court further found no evidence "demonstrating [that] a material fact dispute [exists] with respect to the falsity of the 'representation,' or that it was known to be false when 'made.'"

Observing that even if it resolved the choice-of-law issue in Bacon's favor and applied Iowa law, the court found that Bacon's punitive damage claim would fail because its fraudulent-misrepresentation claim failed. In the alternative, the court determined that Bacon "did not produce clear, convincing and satisfactory evidence supporting a finding that Liberty Mutual willfully and wantonly disregarded his rights."

As to Bacon's breach-of-contract claim, the court assumed that a contract existed and concluded that Liberty Mutual did not breach it because, "[u]pon Bacon's settling of his lawsuit against Ridgetop, Liberty Mutual performed exactly as it said it would, i.e., it did not assert a lien against the settlement monies, from Ridgetop, but rather claimed an offset against those monies to its future workers' compensation obligations."

## II. *Discussion*

On appeal, Bacon argues that the district court erred in granting summary judgment to Liberty Mutual on his fraudulent-misrepresentation and breach-of-contract claims. According to Bacon, Liberty Mutual illegally delayed the disbursement of settlement proceeds by fraudulently asserting a subrogation interest in those settlement proceeds and breaching its earlier agreement that it had no such right to subrogation from those settlement proceeds. Bacon also asserts that the district court erred in applying Nebraska law to conclude that punitive damages are not available.

-6-

"We review de novo the district court's grant of summary judgment to [Liberty Mutual] on the breach[-]of[-]contract [and fraudulent-misrepresentation] claim[s]." *Myers v. Richland Cnty*, 429 F.3d 740, 750 (8th Cir. 2005).

As the district court pointed out—and as Bacon confirms on appeal[2]—the parties agree that no true conflict exists between Iowa and Nebraska law regarding Bacon's contract and fraud claims. As a result, no choice-of-law analysis is required. *See Modern Equip. Co. v. Cont'l W. Ins. Co.*, 355 F.3d 1125, 1128 n.7 (8th Cir. 2004) ("If there is not a true conflict between the laws . . . on the pertinent issue, then no choice-of-law is required."). "Therefore, regardless of which state's law applies, our interpretation and application of the [fraudulent-misrepresentation and breach-of-contract claims] will be the same." *Weitz Co, LLC v. Lloyd's of London*, 574 F.3d 885, 890 (8th Cir. 2009). Only if we conclude that the district court erred in granting summary judgment to Bacon on his claims need we engage in a choice-of-law analysis to determine whether punitive damages are available. *See Bacon*, 575 F.3d at 785.

A. *Fraudulent Misrepresentation*

According to Bacon, his fraudulent-misrepresentation claim is based upon Liberty Mutual's affirmative assertion in its written answer to the Nebraska declaratory-judgment action. Bacon alleges that Liberty Mutual represented that it had a viable subrogation interest in the Ridgetop settlement proceeds when it knew that it lacked such a right. Bacon maintains that Liberty Mutual knew that it lacked such a right because Liberty Mutual knew in advance of the Ridgetop settlement that Ridgetop was the parent company of Bacon's employer—Davis Erection—and that no subrogation could exist by virtue of that relationship. He further asserts that

---

[2]In his opening brief, Bacon states that "there is no conflict with regard to the laws of Iowa and Nebraska with regard to Plaintiff's breach[-]of[-]contract and fraudulent[-]misrepresentation claims. As such, this Court does not need to determine which state's laws will apply to those claims under the Restatement."

Liberty Mutual knew that it lacked a subrogation right because its own workers' compensation policy contained a waiver-of-subrogation endorsement, which precluded subrogation against all who performed work or provided services on the construction project. Finally, he contends that Liberty Mutual knew that it lacked a subrogation right because the policy language in the OCIP insurance policy precluded subrogation. As a result, Bacon argues that he reasonably relied on Liberty Mutual's earlier assertion that it had no viable subrogation interest in the Ridgetop settlement. According to Bacon, Liberty's after-the-fact assertion that it did have a subrogation interest amounted to a fraudulent misrepresentation.

In response, Liberty Mutual argues that the district court correctly concluded that a party's failure to reconfirm a contract—the import and meaning of which it disputes—cannot serve as a basis for a fraud claim, especially considering that Bacon did not rely upon the representation that he asserts forms the basis of the fraud claim.

> To establish a claim of fraudulent misrepresentation, a plaintiff must prove (1) defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material, (4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in reliance on the truth of the representation and was justified in relying on the representation, (7) the representation was a proximate cause of plaintiff's damages, and (8) the amount of damages.

*Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001).

According to Bacon, Liberty Mutual's answer in the Nebraska declaratory-judgment action constitutes the "false misrepresentation." In its answer, Liberty Mutual stated that it had a "bona fide workers' compensation lien entitling [it] to statutory credit for the funds netted by [Bacon] through the settlement agreement by and between [Bacon] and Ridgetop Holdings, Inc." According to Bacon, this false

misrepresentation was contrary to Liberty Mutual's prior position in Ward's August 27, 2007 letter to Bacon's counsel.

We affirm the district court's conclusion that Bacon failed to prove that Liberty Mutual made a false representation in its declaratory-judgment answer by stating that it had a lien entitling it to a statutory credit. Neither party disputes that Ward's August 27, 2007 letter to Bacon's counsel provided, in relevant part:

> We are in agreement that we have no "recovery" rights as to any settlement monies from Kiewit or Ridgetop. However, although we can not recover from those entities, *we would still have a claim to Statutory Credit/offset against any net to Mr. Bacon from those entities*. It goes to the "no double recovery rule," and to the State's Statutes as to our future obligations to Mr. Bacon post his recovery from 3rd party monies.

(Emphasis added.)

Thus, Liberty Mutual's position in Ward's August 27, 2007 letter may be read consistently with its position in the declaratory-judgment action. Liberty Mutual contended that it was entitled to a statutory credit for any funds that Bacon receives from, *inter alia*, Ridgetop. As Liberty Mutual points out, in neither Ward's August 27, 2007 letter nor Liberty Mutual's declaratory-judgment answer did Liberty Mutual assert that it had a right of "subrogation." As the district court concluded, Liberty Mutual's refusal to agree with Bacon's contrary interpretation of Ward's August 27, 2007 letter "does not, as a matter of law, amount to fraud."

Moreover, even assuming that Liberty Mutual's declaratory-judgment answer was "false," Bacon must still identify evidence in the record showing that Liberty Mutual "knew" that the representation was false. As the district court concluded, there is no evidence in the record demonstrating that Liberty Mutual knew the

representation to be false, especially considering that "the import and meaning" of Ward's August 27, 2007 letter is disputed.

Finally, Bacon did not "rely upon" the representation made in the declaratory-judgment answer. When Liberty Mutual answered the complaint, Bacon had already settled his case with Ridgetop. The statement that Bacon "relied upon," if any, was Ward's August 27, 2007 letter to Bacon's counsel. And, Bacon only "relies upon" the first sentence of Ward's letter, which states, "We are in agreement that we have no 'recovery' rights as to any settlement monies from Kiewit or Ridgetop."

As a result, we hold that the district court did not err in granting summary judgment to Liberty Mutual on Bacon's fraudulent-misrepresentation claim.

## B. *Breach of Contract*

Bacon argues that Liberty Mutual breached its earlier agreement that it had no subrogation interest. According to Bacon, the consideration for that earlier agreement was a promise for a promise—Liberty Mutual agreed not to assert a subrogation claim from any settlement proceeds resulting from either Ridgetop or Kiewit in the third-party action. Bacon, in turn, agreed to continue pursuing those third-party actions against Ridgetop and others even though both factual and legal hurdles remained in his path. Bacon maintains that Liberty Mutual's breach of its earlier agreement that it had no subrogation right against Ridgetop's settlement proceeds unreasonably and illegally delayed disbursements of needed settlement proceeds to Bacon.

In response, Liberty Mutual contends that Bacon's breach-of-contract claim fails because (1) Liberty Mutual performed as promised and (2) if a meeting of the minds existed, it was simply that Liberty Mutual would give up its lien rights in exchange for future credit rights. Liberty Mutual maintains that Bacon's counsel repudiated this agreement three times following the parties' exchange of correspondence by refusing to provide Liberty Mutual the information necessary to

-10-

calculate its future credit amount and by attempting to extinguish Liberty Mutual's right to a future credit.

> In a breach-of-contract claim, the complaining party must prove: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach. *Iowa-Illinois Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (Iowa 1993). A party breaches a contract when, without legal excuse, it fails to perform any promise which forms a whole or a part of the contract. *Magnusson Agency v. Public Entity Nat'l Co.*, 560 N.W.2d 20, 27 (Iowa 1997).

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998).

In his complaint, Bacon alleged that Liberty Mutual breached its contract with him by failing to perform its written promise that it was "'in agreement that [it] ha[s] no 'recovery' rights as to settlement monies from Ridgetop or Kiewit.'" Before the district court, Bacon "identifie[d] the contract as Liberty Mutual's promise not to enforce any subrogation interest in any recovery from Ridgetop in exchange for Jim Harris'[s] promise to pursue third-party claims against other defendants from whom Liberty Mutual could subrogate." The district court found "no clear promise by Harris to pursue third-party claims against other defendants from whom Liberty Mutual could subrogate, which is the purported consideration for the contract Bacon alleges." But the district court cited Liberty Mutual's concession that a contract exists and therefore considered Liberty Mutual's potential breach of that contract.

For purposes of this appeal, we will, as the district court did, assume that a contract exists.[3] We conclude that Bacon has failed to prove that Liberty Mutual

---

[3]On appeal, Liberty Mutual argues that in its motion for summary judgment it argued that there was no consideration supporting the existence of a contract.

-11-

"breached" that contract. Looking at Ward's August 27, 2007 letter, Liberty Mutual agreed that it had "no 'recovery' rights as to any settlement monies from Kiewit or Ridgetop," but it argued that it had "a claim to Statutory Credit/offset against any net to Mr. Bacon from those entities." As explained *supra*, Liberty Mutual's declaratory-judgment answer reads consistently with Ward's August 27, 2007 letter. In its answer, Liberty Mutual stated that it had a "bona fide workers' compensation lien entitling [it] to statutory credit for the funds netted by [Bacon] through the settlement agreement by and between [Bacon] and Ridgetop Holdings, Inc." As the district court observed, "[u]pon Bacon's settling of his lawsuit against Ridgetop, Liberty Mutual performed exactly as it said it would, i.e., it did not assert a lien against the settlement monies, from Ridgetop, but rather claimed an offset against those monies to its future workers' compensation obligations."

Therefore, the district court did not err in granting summary judgment to Liberty Mutual on Bacon's breach-of-contract claim.

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.[4]

_____

However, Liberty Mutual has failed to explain why the district court stated that "Liberty Mutual concedes the existence of a contract."

[4]Because we hold that the district court did not err in granting summary judgment to Liberty Mutual on Bacon's claims, we need not address whether Iowa or Nebraska law would have applied to Bacon's claim for punitive damages.

-12-