# IN THE COURT OF APPEALS OF IOWA

No. 17-1503
Filed January 9, 2019

**THOMAS JAMES DUNLAP,**
    Plaintiff-Appellant,

**vs.**

**AIG, INC., COMMERCE AND INDUSTRY INSURANCE COMPANY and AIG DOMESTIC CLAIMS, INC. CORPORATIONS,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.

Thomas Dunlap appeals the dismissal of his civil suit against his former employer's workers' compensation insurance carrier following the district court's grant of summary judgment in the insurers' favor. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

Steven J. Crowley and Edward J. Prill of Crowley & Prill, Burlington, for appellant.

Keith P. Duffy, Coreen K. Sweeney, and Stephanie L. Marett of Nyemaster Goode, P.C., Des Moines, for appellees.

Heard by Potterfield, P.J., Doyle, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**DOYLE, Judge.**

Workers' compensation claimant Thomas Dunlap brought a civil action asserting claims of bad faith and intentional infliction of emotional distress against his former employer's workers' compensation insurance carriers relating to the handling of his workers' compensation claims. Following motions for summary judgment, the district court found Dunlap could not establish elements of his claims and granted summary judgment in favor of the insurers. Dunlap appeals, challenging the district court's ruling in numerous respects. Upon our review, we affirm in part, reverse in part, and remand for further proceedings.

## I. *Background Facts and Proceedings.*

In July 2007, Thomas Dunlap sustained a work injury while employed by Action Warehouse. *See Dunlap v. Action Warehouse*, 824 N.W.2d 545, 548 (Iowa Ct. App. 2012). He filed a claim for workers' compensation and was ultimately awarded benefits in 2009 following a hearing. *See id.* The deputy workers' compensation commissioner

> found the greater weight of the evidence showed Dunlap's low back, left leg, and left arm symptoms were caused by Dunlap's July 2007 work injury, Dunlap had clearly not reached maximum medical improvement, and Dunlap was in a running healing period. The deputy further found Dunlap's employment was terminated because he was unable to work due to his back condition caused by the work injury and was therefore entitled to temporary partial disability and healing period benefits. The deputy declined Dunlap's request for penalty benefits, finding [two doctors' expert] opinions made [his employer's] liability fairly debatable.

*Id.* at 553-54. The deputy's opinion was affirmed by the workers' compensation commissioner on appeal. *See id.* at 554. Following a judicial review by the district court, this court affirmed the agency's decision in all respects, including that

penalty benefits were not appropriate because the issue of liability was fairly debatable. *See id.* at 554-60 (reversing the district court's reversal of the agency's determination that the issue of liability was fairly debatable, resulting in our total affirmance of the agency's decision).

In September 2009, while that agency action and litigation was pending, Dunlap filed a civil action against Action Warehouse and its workers' compensation insurance carriers Commerce and Industry Insurance Company, AIG Domestic Claims, Inc., and AIG, Inc.[1]  This is the matter presently at issue on appeal. Relevant here, Dunlap asserted claims of bad faith and intentional infliction of emotional distress against the defendants related to his 2007 work injury and workers' compensation claim.  The civil case was stayed a number of times over the years as Dunlap's 2007 workers' compensation claim progressed through the previously described administrative process.

Meanwhile, in 2013, Dunlap filed a review-reopening petition before the workers' compensation commissioner seeking to review and reopen the 2009 agency decision "to convert the running healing period" and receive permanent total disability benefits.  Since the 2009 agency hearing, "Dunlap's medical and physical condition ha[d] deteriorated," and he had "required ongoing and extensive medical care for his low back."  "Dunlap developed mental health problems" and experienced "sleep difficulties and disturbances related to his low back symptoms." "As a result of his low back injury and resulting symptoms, [Dunlap] began using a

---

[1] Dunlap later dismissed his suit against Action Warehouse.  Additionally, though he originally named "AIG International Group" as a defendant, the district court permitted him to amend his petition to instead name "AIG, Inc." as the proper defendant.  We collectively refer to the remaining defendants collectively as "the defendants."

cane to assist with walking," using his right hand to hold the cane. Over time, Dunlap developed bilateral carpal, cubital, and ulnar tunnel syndrome (referred to as "arm injuries" or "2012 injuries" in this opinion). Three doctors opined Dunlap's arm injuries were causally related to his prior 2007 work injury.

Nevertheless, the defendants denied liability for the arm injuries, relying upon the opinions of Dunlap's neurologist, Dr. Irving Wolfe, who evaluated Dunlap in November 2011. Dr. Wolfe "noted symptoms in both the right and left arms" and referred Dunlap to a hand specialist, who in turn recommended surgeries for Dunlap's arm injuries. The hand specialist is one of the three doctors that opined Dunlap's arm injuries were causally connected to his 2007 work injury.

After "defense counsel conferenced with Dr. Wolfe," Dr. Wolfe in April 2012 opined in a report there was "no causality regarding [Dunlap's arm conditions and] symptoms in regard to" Dunlap's 2007 work injury. A month later, Dr. Wolfe "clarified his medical opinions in a report requested by [Dunlap's] counsel," opining, "It is possible (e.g., less than 51%) that [Dunlap's arm injuries] while not directly caused by the . . . 2007, work-related injury are a result of the natural consequences of [Dunlap's] back injury requiring him to ambulate with the use of a cane." Dr. Wolfe stated further testing could rule out other possible causes such that his opinion of a causal connection could rise from possible to probable. Nevertheless, the defendants continued to deny liability based upon Dr. Wolfe's opinions.

Following a hearing in November 2014, the deputy concluded Dunlap established his arm injuries were directly related to his 2007 work injury "or arose as a sequela of that work injury," and the defendants were "responsible for each

of these compression neuropathy conditions." The deputy granted Dunlap's request for alternate medical care, ordered the defendants to "continue to pay [Dunlap] healing period benefits," and ordered the defendants to pay certain costs such as filing fees, transcript fees, doctors' reporting fees, and reimbursement for fees related to Dunlap's independent medical evaluation. However, the deputy found the issue of permanent disability was not ripe for determination at that point because Dunlap had not reached maximum medical improvement.

In a rehearing application, Dunlap asserted several challenges to the deputy's decision. The deputy subsequently determined the permanent disability issue was ripe and concluded Dunlap is permanently and totally disabled as a result of his low back and mental health injuries. The deputy awarded Dunlap compensation for his permanent total disability and ordered the defendants to pay Dunlap's mileage claim related to his travel for his evaluation, among other things.[2]

In 2015, the district court in the civil case granted Dunlap's first motion to amend his petition, including adding a claim of bad faith related to his 2012 injuries and permanent-disability-benefits award. The civil matter subsequently culminated in a motion for summary judgment filed by the defendants at the end of 2016. While the summary judgment matter was pending, Dunlap on March 22, 2017, filed a second motion to amend his previously amended petition seeking to add a claim of abuse of process against the defendants.

A hearing on the defendants' summary judgment motion was held March 31, 2017. Before ruling on Dunlap's second motion to amend, the district court

---

[2] The defendants appealed the deputy's rulings, and the workers' compensation commissioner affirmed the rulings in 2016.

entered its ruling partially granting and partially denying the defendants' summary judgment motion. The court found the claims asserted by Dunlap in his first amended petition against the defendants could be broken down into three components as follows: (1) bad faith for the defendants' handling of his 2007 and 2012 injuries, (2) bad faith for the defendants' handling of his mileage claim, and (3) intentional infliction of emotional distress. After considering all the relevant evidence in the record, the district court determined no issues of material fact existed concerning the defendants' handling of Dunlap's 2007 workers' compensation claim to establish the defendants acted in bad faith, and the defendants were accordingly entitled to summary judgment on those related issues as a matter of law. The court found the defendants' actions in handling or mishandling of Dunlap's initial workers' compensation claim was fully litigated before the agency and again on appeal of the agency's decision. Citing our 2012 opinion upholding the agency's award of benefits to Dunlap, as well as the agency's denial of penalty benefits, the district court found it had been previously determined the defendants had "a reasonable basis for [their] position that no benefits were owing to Dunlap." *See Dunlap*, 824 N.W.2d at 558. The court reasoned Dunlap was therefore precluded from re-litigating the issue in his civil case. The court further concluded that even if issue preclusion did not apply, it would still find, for the reasons found by the agency and affirmed on appeal, that the defendants had a reasonable basis for their position that Dunlap was not owed benefits related to his 2007 work injury. The court found supporting opinion evidence in the record that Dunlap did not establish causation made the issue fairly debatable. Consequently, the court found Dunlap could not show the defendants

acted in bad faith in initially denying his initial workers' compensation claim, and the defendants were entitled to summary judgment with respect to that aspect of Dunlap's bad-faith claim.

However, the district court did find a genuine dispute of material fact existed as to the defendants' handling of Dunlap's later claims concerning injuries in his arms. Though the defendants cited an expert's opinion for its position that Dunlap's arm injuries were not caused by his 2007 work injury, the district court found their reliance on that opinion was not reasonable under the circumstances. The court concluded that, on this claim, the defendants "took a position that reasonable minds could not hold in light of the quantity and quality of conflicting expert opinions provided on the issue."

On the bad faith claim relating to the defendants' failure to pay mileage, the court found it lacked jurisdiction to decide the issue because Dunlap failed to exhaust his administrative remedies to resolve the claim. The court concluded an "alternate medical care petition provide[d] [Dunlap] with his exclusive remedy, and there is no dispute that he failed to exhaust it." Consequently, the court held it lacked jurisdiction over this claim. Nevertheless, the court further reasoned that if it had jurisdiction to address the issue, it would conclude the defendants had a reasonable basis for their delay in payment of Dunlap's mileage, since the delay was

> reasonably attributable to the initial provision by [Dunlap] of incomplete information to the [defendants] and subsequent verification of the missing information by the [defendants] once the missing information was provided. The communication disconnect and delay ran both directions and amounted to nothing more, and nothing less. It did not rise to bad faith by the [defendants].

Finally, the court noted Dunlap must establish, as an element of a claim for intentional infliction of emotional distress, that the defendants "engaged in extreme and outrageous conduct," defined as "conduct so extreme as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." The court reasoned that while the defendants "tracking and oversight of [Dunlap's] claims file was shoddy, . . . their management of his claims file was not so extreme as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." "Under this record, reasonable minds—while perhaps not impressed by the [defendants'] handling of [Dunlap's] claims—could not differ regarding their lack of liability for intentional infliction of emotional distress upon [Dunlap]." The court determined summary judgment was proper on the issue. Accordingly, the district court concluded all but one of Dunlap's claims must be dismissed. Both Dunlap and the defendants filed motions requesting the district court reconsider its summary judgment ruling.

While the parties' motions to reconsider were pending, the district court entered its ruling on other motions pending in the case. The court denied the paragraph of Dunlap's second motion to amend his petition to add an abuse-of-process claim against the defendants. The court noted "Iowa law does not extend abuse-of-process claims to cases arising from alleged abuses committed by defendants in administrative proceedings," and the court declined Dunlap's request to expand the scope to include actions before administrative agencies.

In August 2017, after reconsidering the issues raised in the parties' motions to reconsider the court's summary judgment ruling, the district court determined

the defendants were entitled to summary judgment on the one issue it did not dismiss in its earlier ruling. Upon further consideration, the court noted the defendants relied upon an expert's opinion given in two separate letters opining Dunlap's arm injuries were not caused by his earlier back injury. The court concluded Dunlap did not meet

> his burden in responding to this evidence by producing his own evidence supporting his argument that it would be unreasonable for the [defendants] to rely upon [their expert's] two "no causation" opinions. There is no evidence before the court that a jury could reasonably rely upon in concluding reliance on a medical doctor's twice-stated and consistent no-causation opinion was unreasonable.

Accordingly, the district court found the defendants' "motion to reconsider and their motion for summary judgment as to the second period claim should be granted." The court denied Dunlap's motion to reconsider and dismissed his amended petition.

Dunlap now appeals the district court's grant of summary judgment in favor of the defendants.

## II. Scope of Review.

The appellate courts review rulings on motions for summary judgment for correction of errors at law. *See Homan v. Branstad*, 887 N.W.2d 153, 163 (Iowa 2016). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 253 (Iowa 2012). The district court's findings of fact are binding on us if supported by substantial evidence. Iowa R. App. P. 6.904(3)(a). If the moving party has

shown there is no genuine issue regarding any material fact, entitling the moving party to judgment as a matter of law, summary judgment is appropriate. *See* Iowa R. Civ. P. 1.981(3). Therefore, our review is limited to two questions: (1) whether there is a genuine dispute regarding the existence of a material fact, and (2) whether the district court correctly applied the law to the undisputed facts. *See Homan*, 887 N.W.2d. at 164.

A fact is material if it may affect the lawsuit's outcome. *See id.* There is a genuine dispute as to the existence of a fact if reasonable minds can differ as to how the factual question should be resolved. *See id.* "Even if facts are undisputed, summary judgment is not proper if reasonable minds could draw from them different inferences and reach different conclusions." *Walker Shoe Store v. Howard's Hobby Shop*, 327 N.W.2d 725, 728 (Iowa 1982).

In reviewing summary judgment rulings, we view the record in the light most favorable to the nonmoving party. *See Homan*, 887 N.W.2d at 163-64. This includes drawing all legitimate inferences that the record supports in favor of the nonmoving party. *See id.* at 164. The nonmoving party is also given the benefit of any doubt in determining whether granting summary judgment is appropriate. *See Butler v. Hoover Nature Trail, Inc.*, 530 N.W.2d 85, 88 (Iowa Ct. App. 1994). We therefore view the record in the light most favorable to Dunlap, the nonmoving party. *See id.*

"Questions of jurisdiction, authority, and venue are legal issues to be reviewed for corrections of errors at law." *Thornton v. Am. Interstate Ins. Co.*, 897 N.W.2d 445, 460 (Iowa 2017); *Schaefer v. Putnam*, 841 N.W.2d 68, 74 (Iowa 2013). However, a district court's refusal to allow amendment of a petition to

conform to the proof will only be reversed upon a showing of a clear abuse of discretion. *See In re Estate of Workman*, 903 N.W.2d 170, 175 (Iowa 2017).

### III. Discussion.

Dunlap challenges the district court's ruling in five respects. The first two issues relate to his bad-faith claims, arguing the court erred in applying issue preclusion, finding no jurisdiction to consider an issue, and in determining the defendants had a reasonable basis to deny liability for his claims. Third, Dunlap asserts the court erred in ruling that it lacked jurisdiction to consider his bad faith claim relating to payment for mileage. Fourth, Dunlap contends summary judgment was inappropriate on his claim of intentional infliction of emotional distress. Finally, Dunlap maintains the court should have granted his request to add his claim of abuse of process in his second motion to amend his petition.

### A. Bad Faith.

Iowa Code chapter 85 (2009) provides the exclusive rights and remedies for an employee to seek compensation from an employer for injuries arising out of and in the course of employment. *See* Iowa Code § 85.20; *Baker v. Bridgestone/Firestone*, 872 N.W.2d 672, 676 (Iowa 2015); *see also Thornton*, 897 N.W.2d at 462. "In the grand bargain removing workers' compensation matters from the civil justice system, employers receive immunity from potentially large tort lawsuits and jury verdicts on the condition that they pay compensation benefits for injuries arising out of and in the course of employment without regard to fault." *Baker*, 872 N.W.2d at 676-77. But, as part of this quid pro quo, workers' compensation insurers have an "obligation to act in good faith in the exercise of this authority." *Thornton*, 897 N.W.2d at 445, 462, 472-73.

Once a work injury has been established, an injured employee, as a general rule, "may recover compensation for a new injury or an aggravation of an injury . . . if there is no intervening independent cause to break the chain of causation between the new injury or aggravation and the original injury." 82 Am. Jur. 2d *Workers' Compensation* § 345 (Westlaw 2018); *see also* Steven Plitt et al., 9A *Couch on Ins.* § 136:63-64; *Pella Corp. v. Sharp*, No. 09-0502, 2009 WL 5126121, at *2-3 (Iowa Ct. App. Dec. 30, 2009) (discussing 1 Arthur Larson & Lex K. Larson, *Larson's Worker's Compensation Law* § 10.01, at 10-2 (ed. 2008)). "In other words, where an accident occurs to an employee in the usual course of his employment, the employer is liable for all consequences that naturally and proximately flow from the accident." *DeShaw v. Energy Mfg. Co.*, 192 N.W.2d 777, 780 (Iowa 1971) (quoting *Oldham v. Scofield & Welch*, 266 N.W. 480, 482 (Iowa 1936)).

While a civil penalty may be imposed upon an employer and its workers' compensation insurance carrier administratively pursuant to Iowa Code section 86.13(4)(a) if workers' compensation benefits are unreasonably delayed or terminated, subsequent actions by the insurer may expose the insurer to civil tort liability outside the administrative arena. *See Thornton*, 897 N.W.2d at 472-73; *see also Boylan v. Am. Motorists Ins. Co.*, 489 N.W.2d 742, 744 (Iowa 1992). Specifically, Iowa recognizes a common law, first-party bad faith tort action against a workers' compensation insurer that willfully or recklessly disregards its obligation to pay benefits to its injured employee. *See Boylan*, 489 N.W.2d at 743-44 (extending the tort of first-party insurer bad faith recognized in *Dolan v. AID Insurance Co.*, 431 N.W.2d 790, 794 (Iowa 1988), to workers' compensation

insurers); *see also Thornton*, 897 N.W.2d at 462 (discussing *Boylan*). This action does "not fall within the commissioner's exclusive jurisdiction" but rather supplements the workers' compensation statute. *Thornton*, 897 N.W.2d at 472-73.

"To establish a first-party bad-faith claim against a workers' compensation insurer, [a] plaintiff must show '(1) that the insurer had no reasonable basis for denying benefits under the policy and, (2) the insurer knew, or had reason to know, that its denial was without basis.'" *Id.* at 461-62. "The first element is objective; the second is subjective." *Id.* at 465. The Iowa Supreme Court recently addressed the "reasonable basis" element of a bad-faith claim in *Thorton*:

> A reasonable basis for denying insurance benefits exists if the claim is fairly debatable as to either a matter of fact or law. A fairly debatable claim is one that is open to dispute on any logical basis. Stated another way, if reasonable minds can differ on the coverage-determining facts or law, then the claim is fairly debatable.
>
> The fact that the insurer's position is ultimately found to lack merit is not sufficient by itself to establish the first element of a bad faith claim. The focus is on the existence of a debatable issue, not on which party was correct.
>
> Whether an issue of fact is debatable can ordinarily be decided by the court. That is because where an objectively reasonable basis for denial of a claim actually exists, the insurer cannot be held liable for bad faith as a matter of law. Courts and juries do not weigh the conflicting evidence that was before the insurer; they decide whether evidence existed to justify denial of the claim. In many cases, a directed verdict or summary judgment for the insurer dismissing the bad-faith claim may be appropriate because some evidence existed to justify its denial as a matter of law.

*Id.* at 465-66 (cleaned up).

### 1. 2007 Claim – Issue Preclusion.

"Under issue preclusion, once a court has decided an issue of fact or law necessary to its judgment, the same issue cannot be relitigated in later proceedings." *Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 571 (Iowa 2006). Specifically, an issue will not be permitted to be heard if all of the following are true:

> (1) the issue determined in the prior action is identical to the present issue; (2) the issue was raised and litigated in the prior action; (3) the issue was material and relevant to the disposition in the prior action; and (4) the determination made of the issue in the prior action was necessary and essential to that resulting judgment.

*Id.* at 572 (citation omitted); *see also Gardner v. Hartford Ins. Accident & Indemn. Co.*, 659 N.W.2d 198, 206 (Iowa 2003). "The ultimate final judgment need not be on the specific issue to be given preclusive effect. . . . However, it must be 'firm and considered' or 'resolved.'" *Stender v. Blessum*, 897 N.W.2d 491, 513 (Iowa 2017) (cleaned up).

Dunlap seeks to distinguish the penalty-benefits issue before the agency from his civil claims, noting "penalty benefits can *only* be imposed if *weekly* compensation benefits have been unreasonably denied, as there are no penalty benefits available for the unreasonable denial of *medical* care." Dunlap contends he therefore could not have litigated whether the defendants acted in bad faith in denying his medical care.

Viewing the facts in the light most favorable to Dunlap, we agree with the district court that whether the defendants unreasonably denied Dunlap medical care in handling his 2007 claim *is* the same issue litigated and decided by the deputy. While the tort of bad faith is not within the jurisdiction of the workers'

compensation commissioner, the reasonable-basis issue itself was directly before the agency as part of the determination of whether Dunlap was entitled to penalty benefits under section 86.13. The defendants held the burden of proof at the agency proceeding and were essentially required to establish they acted in good faith. *See Brcka v. St. Paul Travelers Cos., Inc.*, 366 F. Supp. 2d 850, 857 (S.D. Iowa 2005). The deputy expressly found the defendants' reliance upon their expert's opinion that Dunlap's conditions were not related to his work injury to deny benefits was not unreasonable. There is nothing to indicate that the agency proceedings were not fair or that Dunlap did not have an opportunity to litigate the reasonableness of the defendants' denial of liability of that claim. The deputy's finding is simply an alternative way of stating the issue of whether the defendants were liable for Dunlap's injury was fairly debatable. Because the deputy already determined the defendants' denial of liability on the basis of their expert's opinion that Dunlap's conditions were not related to his work injury, the district court corrected concluded Dunlap is precluded from again arguing lack of a reasonable basis in the form of a bad-faith tort action concerning the defendants' conduct related to their handling of his 2007 workers' compensation claim.

### 2. Conduct Relating to 2012 Injury Claims.

Though the district court initially found summary judgment was not appropriate, the court ultimately determined there was no genuine issue of material fact as to whether the defendants had a reasonable basis to deny benefits relating to their handling of Dunlap's 2012 injury claims. In its reconsideration ruling, the court relied upon "two opinion letters . . . from [Dr. Wolfe] . . . stat[ing] that it was

his 'medical opinion that there is no causality' regarding [Dunlap's arm injuries]." Based upon Dr. Wolfe's letters, the court found Dunlap did not meet

> his burden in responding to this evidence by producing his own evidence supporting his argument that it would be unreasonable for [the defendants] to rely upon Dr. Wolfe's two 'no causation' opinions. There is no evidence before the court that a jury could reasonably rely upon in concluding reliance on a medical doctor's twice-stated and consistent no-causation opinion was unreasonable.

Dunlap first asserts that "the district court erroneously applied the 'no gray area' version of the fairly debatable standard." We believe this argument can be summarized as follows: the district court must have found the mere existence of an expert opinion denying causality sufficient to show the issue of liability was fairly debatable. Stated another way, paraphrasing Dunlap's counsel's oral argument, "Would the opinion of a veterinarian stating there was no causality between Dunlap's 2007 work injury and his later arm injuries be sufficient to support the defendants' denial of liability, just because that opinion exists?" Dunlap asks that we "clarify the definition and application of the 'fairly debatable' [standard] to require a complete consideration of all relevant facts and circumstances before concluding that any case is 'fairly debatable' as a matter of law." Insofar as Dunlap requests we overrule precedent, we decline his invitation, as we are not at liberty to do so. *See, e.g.*, *State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed."); *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014) ("We are not at liberty to overrule controlling supreme court precedent."). But in any event, considering the facts in the light most favorable to Dunlap, we find the district court erred in finding there was no genuine issue of material fact that the

defendants reasonably relied upon their expert's opinion in denying Dunlap's arm injuries claim.

To be sure, an opinion denying causality by itself is not enough to make an issue of liability fairly debatable. *See Thornton*, 897 N.W.2d at 465-66; *Reuter v. State Farm Mut. Auto. Ins. Co.*, 469 N.W.2d 250, 254 (Iowa 1991). Rather, an insurer can only rely upon a *reasonable* opinion denying causation to successfully defeat a claim of bad faith. *See id.*; *Villarreal v. United Fire & Cas. Co.*, 873 N.W.2d 714, 727 (Iowa 2016) (stating again "one essential element of a first-party bad-faith claim is that the insurer lacked an objectively reasonable basis for denying the claim"); *see also* Steven Plitt et al., 14 *Couch on Ins.* § 207:4 (3d ed. 2018) ("An insurer's reliance on the opinion of independent expert is a reasonable basis for denial of a claim, provided that the expert's report is objectively prepared and the insurer's reliance on the report is reasonable." (footnotes omitted)). Other courts have reached similar conclusions. *See, e.g.*, *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 996 (9th Cir. 2001) ("Expert testimony does not automatically insulate insurers from bad faith claims based on biased investigations."); *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997) ("[W]e have repeatedly acknowledged that an insurer's reliance upon an expert's report, standing alone, will not necessarily shield the carrier if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable."). Here, however, the district court concluded Dunlap failed to prove the defendants' reliance was unreasonable, therefore making the issue fairly debatable. Thus, it is not just that there was an opinion upon which the defendants' relied—it was that there was an opinion they asserted was reasonable upon which to deny liability,

making the issue fairly debatable. This may seem a parsing of words, but there is a difference.

> However:
>
> Even after an initial determination, it is incumbent on an employer to continue to monitor and investigate any claim for benefits. When . . . sufficient proof justifies a reexamination of an initial determination of nonliability, the employer should be encouraged to change its position to accept liability for an employee's work-related injury.

*Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 244 (Iowa 2018). "While a claim may be fairly debatable at one point in time, if the insurer becomes aware at a later date that the claim is no longer fairly debatable, liability for bad faith may still be imposed." *Zimmer v. Travelers Ins. Co.*, 521 F. Supp. 2d 910, 931-32 (S.D. Iowa 2007); *see also McIlravy v. N. River Ins. Co.*, 653 N.W.2d 323, 331 (Iowa 2002); *Ivy v. V's Holding Co.*, 859 So. 2d 22 (La. Ct. App. 1st Cir. 2003) ("Termination/denial of benefits may be considered arbitrary when it appears further medical information was required to make an exact determination of the employee's condition. This obligation is continuing in nature. If an insurer or employer first receives an optimistic medical report, but later receives information indicating the possibility of continuing disability, it may not blindly rely on the earlier report to avoid penalties and attorney's fees."); *Hill v. Nationwide Ins. Co.*, 570 A.2d 574, 580 (Pa. Super. 1990) ("Nationwide's decision to rely upon the reports of its own doctors, only one of whom appears actually to have examined Hill, in the face of the overwhelming contrary evidence showing Hill's actual need for continuing treatment, can easily be seen as having no reasonable foundation."). The district court must "carefully review the facts and the particular circumstances

in making its determination as to what is the precise issue or issues that are debatable." *Reuter*, 469 N.W.2d at 254.

That Dunlap was injured at work in 2007 has already been litigated and is fact. He asserted his subsequent injuries to his arms were causally connected to that 2007 injury. Dr. Wolfe did not offer any alterative causes but merely stated in his first report it was his "medical opinion that there is no causality regarding [Dunlap's arm injuries] in regards to the [w]orkmen's [c]ompensation injury of 2007." Dr. Wolfe's second letter similarly stated, in an attempt to clarify his opinion, "It was and is my medical opinion that there is no causality regarding [Dunlap's arm injuries] in regards to the worker's compensation injury of 2007." However, Dr. Wolfe further explained in the second letter he was also responding to a different question asked by Dunlap's counsel—whether, within a reasonable degree of medical certainty, the development of Dunlap's arm injuries *were related* to his 2007 work injury. Dr. Wolfe found it was

> possible (e.g., less than 51%) that [Dunlap's] bilateral carpal tunnel syndrome and right ulnar nerve entrapment at the elbow while not directly caused by the July 18, 2007, work-related injury are a result of the natural consequences of [Dunlap's] back injury requiring him to ambulate with the use of a cane.

Dr. Wolfe further opined additional testing to rule out other causes could result in him elevating his opinion from "possible" to "probable." And, as the deputy workers' compensation commissioner noted in his review-reopening decision, the additional testing mentioned by Dr. Wolfe in the second letter had previously been performed by another doctor to rule out other causes, and, had Dr. Wolfe been so advised, would thus likely have changed his opinion.

Contrary to Dr. Wolfe's opinion, three other doctors opined there was a causal connection between the 2007 injury and the later injuries. Dr. Brunz, who referred Dunlap to Dr. Wolfe, expressed a detailed opinion:

> . . . It is my opinion that Mr. Dunlap presents himself in an honest and straightforward fashion with regard to his symptoms and the limitations he currently has resulting from his back injury.
>
> It has been necessary for Mr. Dunlap to use the assistance of a cane while ambulating due to the ongoing pain symptoms he has resulting from his back injury. I referred Mr. Dunlap to Dr. Wolfe, a neurologist, because of his ongoing problems with ambulation end gait disturbance. Dr. Wolfe, in turn, referred Mr. Dunlap to Dr. [Cherny], a hand specialist. Mr. Dunlap was diagnosed with carpal tunnel and ulnar nerve entrapment. It is probable that the use of Mr. Dunlap's cane as result of his work·related back injury was a substantial, but not necessarily exclusive, factor in causing his carpal tunnel and ulnar nerve entrapments.

Similarly, Dr. Cherny explicitly opined Dunlap's arm injuries were causally related to Dunlap's 2007 work injury. Dr. Kuhnlein, who performed Dunlap's independent medical examination in 2008, also re-examined Dunlap in 2014. After reviewing Dunlap's substantial medical history and performing the examination, Dr. Kuhnlein opined:

> The low back pain and left cubital tunnel syndrome were directly and causally related to the July 18, 2007, fall. The right cubital tunnel syndrome, and the bilateral carpal tunnel syndrome, developed as sequelae to the original injury, based on accommodations made by Mr. Dunlap to accommodate to his chronic back pain, particularly with the use of the cane and with the changes in the way he has used his arms after the injury. The July 18, 2007, injury was a substantial, more than minor, but not exclusive factor, in the later development of the right cubital tunnel syndrome and bilateral carpal tunnel syndrome.

While the defendants' reliance upon Dr. Wolfe's opinion may have initially been reasonable, we believe, viewing the evidence in the light most favorable to Dunlap, that a reasonable fact finder could find the defendants failed to "exercise

an honest and informed judgment" when they continued to rely upon Dr. Wolfe's initial opinion despite Dunlap's other three physicians' opinions to the contrary and Dr. Wolfe's conditional statements in his second letter. We cannot say, as a matter of law, that the defendants' continued reliance upon Dr. Wolfe's opinion was not a reasonable basis for denying liability for Dunlap's arm injuries. *See, e.g.*, *McIlravy*, 653 N.W.2d at 333 ("The reasonableness of the denial of a workers' compensation claim by an insurer is a question of law only when the evidence is undisputed and only one inference can be drawn from the evidence). Nevertheless, it certainly evidences that a genuine issue of material fact exists as to whether the defendants had a reasonable basis to continue to deny liability in light of Dr. Wolfe's clarification and other medical experts' opinions. *See, e.g.*, *id.* ("[T]hough the new information provided . . . did not necessarily render the compensability issue undebatable, it did transform the reasonableness of the continued denial by North River into a jury question . . . . A reasonable inference to be drawn from North River's failure to investigate further is that it knew it had no reasonable basis for denying McIlravy's claim."). Because a genuine issue of material fact existed as to whether the defendants' continued denial of Dunlap's claim after May 2012 based upon Dr. Wolfe's opinion constituted a reasonable basis, the district court erred in granting summary judgment in favor of the defendants on the issue. Accordingly, we must reverse the ruling and remand for further proceedings on this issue.

### 3. Conduct Relating to Dunlap's Mileage Claims.

### a. Subject Matter Jurisdiction.

"Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong, not merely the particular case then occupying the court's attention." *De Stefano v. Apts. Downtown, Inc.*, 879 N.W.2d 155, 164 (Iowa 2016) (cleaned up). In most situations, Iowa Code section 85.20 "clearly and plainly bar[s] a plaintiff's tort suit against his employer." *Tigges v. City of Ames*, 356 N.W.2d 503, 509 (Iowa 1984); *see also Smith v. Iowa State Univ. of Sci. & Tech.*, 851 N.W.2d 1, 19 (Iowa 2014) (parenthetically stating section 85.20 "making the rights of the employee under the [Iowa Workers' Compensation Act) exclusive in certain circumstances"). In those circumstances, unless the employee exhausted his or her administrative procedures, the "district court does not acquire subject matter jurisdiction over a claim" and the claim must be dismissed for lack of jurisdiction. *McGill v. Fish*, 790 N.W.2d 113, 118 (Iowa 2010); *see also Kloster v. Hormel Foods Corp.*, 612 N.W.2d 772, 775 (Iowa 2000).

However, one exception carved out concerns bad-faith tort actions, as discussed above. *See Thornton*, 897 N.W.2d at 472; *see also Tallman v. Hanssen*, 427 N.W.2d 868, 870-71 (Iowa 1988) ("A district court would ordinarily have no subject matter jurisdiction over a claim that an employee is entitled to workers' compensation benefits. But this exclusivity principle is limited to matters surrounding a job-related injury and does not extend to subsequent dealings during which a tort may arise by reason of bad faith on the part of an employer's insurer."). Though the claim was set out by Dunlap as a bad-faith tort claim, the defendants

urged and the district court agreed that Dunlap's claim was actually a claim for alternative medical care, which required proceeding through the agency if he was dissatisfied with the defendants' delinquent payment of his mileage expenses. Because Dunlap did not, the district court concluded it lacked subject matter jurisdiction to consider the claim and the defendants were entitled to summary judgment on the matter. On appeal, Dunlap challenges this characterization of his claim and its dismissal for lack of jurisdiction.

Upon our review, we agree with Dunlap. This situation is very similar to the one considered by the supreme court in *Tallman*. *See* 427 N.W.2d at 870-71. There, the employee brought an intentional-infliction-of-emotional-distress claim against his employer's workers' compensation insurance carrier for "refusing to pay his medical bills or to provide a physician." *Id.* at 870. The insurer claimed because the employee failed to go through the administrative process set forth under chapter 85 the district court did not have jurisdiction to hear the claim. *See id.* The district court agreed and dismissed the claim for lack of subject matter jurisdiction, and the supreme court reversed on appeal. *See id.* at 870-71. Quoting from another case, the court explained:

> The liability sought here to be imposed upon [the insurer] does not arise out of the injury suffered by [the employee] on October 6, 1977. It derives from the independent and allegedly intentional, tortious conduct of [the insurer] in refusing to pay benefits owing under the [Workers' Compensation] Act without an arguable basis therefor.

*See id.* at 870 (quoting *In re Certification of Question of Law*, 399 N.W.2d 320 (S.D.1987)). The court did not express any opinion on whether the employee's intentional-infliction-of-emotional-distress claim had any merit, but it determined "only that the trial court had subject matter jurisdiction to consider it" and remanded

the case. *See id.* at 871. Similarly, in *Thornton*, the court found "the district court has subject matter jurisdiction over [the employee's] bad-faith claim alleging [the insurer] unreasonably delayed the delivery of his new wheelchair." 897 N.W.2d at 473.

Here, Dunlap's claim was not whether he was entitled to payment of his transportation expenses. *See* Iowa Code § 85.27(1) ("The employer, for all injuries compensable under this chapter . . . , shall furnish reasonable . . . services and supplies therefor and shall allow reasonably necessary transportation expenses incurred for such services."), (4) ("[T]he employer is obliged to furnish reasonable services and supplies to treat an injured employee"); Iowa Admin. Code r. 876-8.1(5) (2012) ("Transportation expense in the form of reimbursement for mileage which is incurred in the course of treatment or an examination . . . shall be payable at such time as 50 miles or more have accumulated or upon completion of medical care, whichever occurs first."). Rather, his claim was that the defendants' failed to reimburse him in a timely matter, constituting bad faith for which he was damaged. Clearly, the district court had subject matter jurisdiction to consider this tort claim.

### b. *Merits.*

The district court found that even if it had subject matter jurisdiction to consider the mileage issue, the defendants were entitled to summary judgment as a matter of law because the defendants had a reasonable basis for their delayed reimbursement of Dunlap's transportation expenses:

> It would be reasonable for an insurer to verify that an injured worker actually attended doctor appointments and picked up prescriptions before making payment for these things. [The defendants] reviewed [Dunlap's] claim once they received all requested information, as shown by the e-mail exchanges between counsel itemized

above. . . . When these communications are viewed in total and in context, the court would find that any delay is payment is reasonably attributable to the initial provision by [Dunlap] of incomplete information to [the defendants] and subsequent verification of the missing information by [the defendants] once the missing information was provided. The communication disconnect and delay ran both directions and amounted to nothing more, and nothing less. It did not rise to bad faith by [the defendants].

Upon our review, we agree with the district court's conclusion. We do not find—nor were we directed to—a statutory deadline for repayment of transportation expenses. One treatise suggests:

> Although bad faith claims can be brought against an insurer based upon an assertion that the insurer did not handle the claim in a timely fashion, it must be recognized that delays are inherent in handling complex insurance coverage claims. An insurer can hardly be guilty of bad faith because it exercised caution before paying or formally denying coverage. For example, in *Allstate Insurance Co. v. Salahutdin*, [815 F. Supp. 1309, 1313 (N.D. Cal. 1992)], the court held that a five month delay in advising an insured of a coverage decision after the insurer has all of the facts upon which to base a decision does not constitute bad faith. A lengthy delay in a payment owed by an insurer does not automatically constitute bad faith, since the delay could be due to negligence. It could also be due to the insured failing to provide information that is reasonably requested by the insurer. Obviously, an insurer can, in good faith, delay payment based upon information that it does not yet have. It is only if the delay was due to an evil motive or a reckless indifference to the rights of the insured that bad faith can be present.
>
> An insurer is not guilty of bad faith simply because it chooses to conduct a relevant investigation before deciding whether to provide policy benefits. If the information timely sought by the insurer is potentially relevant, the investigation would not constitute a bad faith dilatory tactic. If the insurer purposefully mishandles a claim, however, by not conducting any investigation, that conduct might constitute a bad faith dilatory tactic.

Allan D. Windt, 2 *Insurance Claims and Disputes* § 9:26 (6th ed. Westlaw 2018) (internal footnotes omitted).

Here, the mileage claims were submitted by Dunlap all at once, and the defendants processed all of the claims and submitted its decision, with payment of

almost all of the claims, all at once. There is no evidence the defendants purposefully mishandled Dunlap's mileage claims, and it appears part of the delay was due to Dunlap failing to provide information requested by the defendants. Under the circumstances, we do not find the district court erred in finding the defendants had a reasonable basis as a matter of law and affirm the district court's grant of summary judgment on the issue.

### B. Intentional-Infliction-of-Emotional-Distress Claim.

To establish a claim of intentional infliction of emotional distress, a plaintiff must prove "(1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; (3) plaintiff suffered severe or extreme emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional distress." *Smith*, 851 N.W.2d at 26. The controlling question here, under the first element, is whether the alleged conduct could reasonably be regarded as outrageous. *See Taggart v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996). "Outrageous conduct" is more than "mere bad conduct." *See id.* "Outrageous conduct" is conduct that a civilized community would find to be outrageous in character and extreme in degree. This civilized community would regard the conduct as atrocious, "utterly intolerable," and going "beyond all possible bounds of decency." *See id.* A member of this civilized community would exclaim, "Outrageous!" when confronted with the conduct. *See id.* The bar to be met is high. *See Eckles v. City of Corydon*, 341 F.3d 762, 770 (8th Cir. 2003); *Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 119 (Iowa 1984).

While we find the question of what constitutes outrageous conduct is a difficult one, we agree with the district court's assessment that, viewing the evidence in the light most favorable to Dunlap, the defendants' conduct does not rise to the level of "outrageous conduct." On the basis of the pleadings and other filed documents, even giving them the widest latitude, it is clear that defendants' acts did not even approach this type of conduct. *See Clark-Peterson Co. v. Indep. Ins. Assocs., Ltd.*, 514 N.W.2d 912, 916 (Iowa 1994). A jury could find that defendants' actions were petty and wrong, even malicious, but we do not believe a fact-finder could reasonably conclude that the conduct went beyond all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community. Because Dunlap cannot establish the defendants' conduct was truly outrageous, his claim fails as a matter of law. Accordingly, the district court did not err in granting the defendants' summary judgment on the issue.

### C. Motion to Amend.

Finally, Dunlap argues the district court erred in denying his second motion to amend his petition to add a claim of abuse of process against the defendants. Though the district court decided the issue upon the defendants' motion for summary judgment, our review is for an abuse of discretion. *See Workman*, 903 N.W.2d at 175; *Daniels v. Holtz*, 794 N.W.2d 813, 817 (Iowa 2010) ("Denial of a motion to amend will only be reversed where a clear abuse of discretion is shown."). "An abuse of discretion occurs when the district court bases its decision on grounds clearly untenable or to an extent clearly unreasonable." *Baker v. City of Iowa City*, 867 N.W.2d 44, 51 (Iowa 2015). "If there is a solid legal basis

supporting the ruling on a motion to amend, there is no abuse of discretion." *In re Estate of Bearbower*, 426 N.W.2d 392, 394 (Iowa 1988).

In Dunlap's second amended petition, he alleges:

> (22) From July 18, 2007 through the filing of this petition, [the defendants] intentionally and repeatedly miss-used:
> a. Their right to control [Dunlap's] medical care under Chapter 85.27 . . . .
> b. The administrative process, including the procedure for alternative medical care petitions;
> c. The worker's compensation appellate process.
> (23) The defendants used the legal processes in the preceding paragraph primarily to avoid paying benefits under Chapter 85 . . . and to force [Dunlap] to abandon his worker's compensation claim or settle it for minimal value, and not for its intended purpose, good faith legal and factual disputes.
> (24) [The defendants] use of the legal process for the improper purpose was a cause of damage to [Dunlap], including additional physical pain, mental pain and suffering, litigation expense, and delay in the receipt of valuable benefits.

The district court denied his motion to add the claim, finding abuse-of-process claims arising from a proceeding in front of a state agency rather than the court is not actionable in Iowa.

"Abuse of process is 'the use of legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed.'" *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 398 (Iowa 2001). "To prove a claim of abuse of process, a plaintiff must show (1) use of the legal process, (2) in an improper or unauthorized manner, and (3) that damages were sustained as a result of the abuse." *Stew-Mc Dev., Inc. v. Fischer*, 770 N.W.2d 839, 849 (Iowa 2009). "The first element can generally be shown by the use of a legal process against the plaintiff." *Wilson v. Hayes*, 464 N.W.2d 250, 266 (Iowa 1990).

In an unpublished case, a panel of this court concluded that administrative proceedings do not constitute a "legal process" within the meaning of an abuse of process. *See Dobratz v. Krier*, No. 11-0120, 2011 WL 5867067, *2-4 (Iowa Ct. App. Nov. 23, 2011). Dunlap does not point us to any other Iowa case that has expressly accepted administrative proceedings as being a "legal process" or directly addressed this issue. Instead, he refers us to *Gibson v. ITT Hartford Insurance Co.*, wherein an abuse-of-process claim was brought for a defendant's alleged misuse of administrative proceedings. *See* 621 N.W.2d 388, 398-99 (Iowa 2001). However, whether an administrative proceeding was a legal process was not was not an issue in that case. *See id.* Cases that have expressly referred to what constitutes a "legal process" generically refer to criminal or civil proceedings. *See, e.g.*, *Wilson*, 464 N.W.2d at 266 (referring to civil and criminal proceedings); *Tomash v. John Deere Indus. Equip. Co.*, 399 N.W.2d 387, 390-91 (Iowa 1987) (same).

Here, Dunlap's motion to amend failed to sufficiently plead facts to support the first element of his abuse-of-process claim. Accordingly, there is a solid legal basis supporting the district court's ruling denying his motion to amend. The district court did not abuse its discretion in denying Dunlap's motion to amend. We therefore affirm this issue.

### IV. Conclusion.

Upon our review, we affirm the district court's ruling in all respects but one. The district court erred in finding the defendants were entitled to summary judgment as a matter of law on Dunlap's 2012 injury claim because a genuine issue of material fact existed as to whether the defendants' reliance upon

Dr. Wolfe's subsequent opinion was reasonable. Viewing the evidence in the light most favorable to Dunlap, a reasonable fact-finder could find that the defendants' reliance was simply not reasonable once they were aware three other experts had opined a causal connection existed between Dunlap's established 2007 work injury and his later injuries and Dr. Wolfe clarified his opinion with a condition that could change his opinion from possible causation to probable causation. Because a fact question exists as to whether the defendants' reliance was reasonable, the claim was not fairly debatable as a matter of law. Consequently, we reverse the district court's ruling in that regard and remand for further proceedings consistent with this opinion. We do not retain jurisdiction, and any costs are assessed to the defendants.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**